J-S53001-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| N.G., | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| C.G., | : | |
| | : | |
| Appellee | : | No. 2205 MDA 2014 |

Appeal from the Order entered November 25, 2014,
Court of Common Pleas, Dauphin County,
Civil Division at No. 2011-CV-04775-CU

BEFORE:  DONOHUE, OTT and MUSMANNO, JJ.

MEMORANDUM BY DONOHUE, J.:              **FILED SEPTEMBER 09, 2015**

Appellant, N.G. ("Father"), appeals pro se from the order entered on November 25, 2014 in the Court of Common Pleas, Dauphin County, denying Father's motion to modify custody and petition for contempt, and granting C.G.'s ("Mother") motion to modify custody.  For the reasons set forth herein, we affirm.

A summary of the factual and procedural history is as follows.  Mother and Father married on July 22, 2007 and their daughter E.G. was born on September 15, 2010.  Mother and Father separated on April 29, 2011, and on May 10, 2011, Father filed a complaint for custody of E.G.

On November 17, 2011, following a three-day custody hearing, the trial court entered a custody order (the "2011 Custody Order").  Pursuant to the 2011 Custody Order, Mother and Father shared legal custody of E.G. and

shared decision-making with regard to E.G.'s health, welfare, education, religious training and upbringing. The trial court awarded Mother primary physical custody of E.G. and partial physical custody to Father on alternating weekends from Thursday at 5:00 p.m. until Monday at 8:00 a.m. The 2011 Custody Order prohibited either parent from relocating E.G. or from traveling outside the continental United States with E.G. without court order.

On February 15, 2013, Mother filed a petition for modification of the 2011 Custody Order, asserting that since May or June 2012, Father requested to exercise custody of E.G. on alternate weekends from Saturday until Sunday instead of Thursday until Monday. Mother requested the trial court to update the 2011 Custody Order to reflect this schedule. On April 29, 2013, the trial court entered an order (the "Amended Custody Order"), amending the 2011 Custody Order to reflect that Father would have custody of E.G. on alternating weekends from Saturday at 9:00 a.m. to Sunday at 5:00 p.m.

In October 2013, Father emailed Mother to inform her that he would not be able to take E.G. for his periods of custody and would let her know when he would next be able to exercise custody. After attempting to contact Father, and learning that his phone number was out of service, Mother contacted Father's attorney, who informed her that he had traveled to India

for an indefinite period.[1]  Father's attorney agreed to provide Mother with at least two weeks' notice of Father's return to the United States and intention to resume exercising custody.

On March 10, 2014, E.G. told Mother that Father visited her at daycare.  The daycare confirmed that Father visited E.G.  The next day, Father emailed Mother, informing her that he intended to pick E.G. up on Saturday for his weekend visit with her.  Mother refused to exchange custody.

On March 27, 2014, Mother filed a petition for modification and contempt of custody order.  Mother's petition alleged that Father "willfully disobeyed" the 2011 Custody Order and the Amended Custody Order by failing to exercise custody, to provide advance notice of his intention to move to India, to notify Mother of his medical health, and to notify Mother of his intention to visit E.G. at daycare.  **See** Mother's Petition for Modification and Contempt of Custody Order, 3/27/14, at 4-5.  Mother requested that the trial court modify the 2011 Custody Order and the Amended Custody Order to give Father several dinner visits and to eliminate overnight visitation.  **Id.** at 5 ¶ 23.

On March 31, 2014, Father filed a petition for contempt, alleging that Mother failed to show up for a custody exchange after he returned from

---

[1]  Mother later learned from Father's parents that Father traveled to India to have a full knee replacement surgery.

India, that Mother rejected his phone calls, and that Mother did not reply to his emails regarding E.G.'s health and activities, in violation of the Amended Custody Order.

Mother and Father appeared before the trial court on July 23, 2014, on their petitions for contempt and Mother's petition for modification. At the hearing, counsel for Mother withdrew the request to eliminate Father's overnight visitation, stating, "At this point, we are not requesting to change the visitation schedule. We are requesting sole legal custody[2] and some language to deal with the issue of [F]ather spontaneously traveling for long periods of time and giving -- requiring some notice to [Mother]." N.T., 7/23/14, at 5. Meanwhile, Father requested that the trial court modify the 2011 Custody to provide shared physical and legal custody of E.G. *Id.*

On August 5, 2014, E.G.'s school, the Goddard School Hershey, terminated its relationship with E.G. The school cited Father's behavior as the reason behind their decision, claiming that Father argued with the school, reported the school to the Department of Public Welfare, threatened and harassed the owners of the school, and disrupted E.G.'s classroom and teacher by visiting E.G. at school several times a week. Mother subsequently found other childcare on short notice, but refused to tell Father what those arrangements were.

---

[2] At the hearing on October 8, 2014, Mother modified her request to limit sole legal custody to matters concerning E.G.'s education and childcare. N.T., 10/8/14, at 47-48.

Following several custody hearings, the trial court entered an order on November 25, 2014 (the "2014 Custody Order") denying Father's motion to modify custody, dismissing Father's petition for contempt, and granting Mother's motion to modify custody. The trial court determined that Father "created an atmosphere wherein daycare facilities no longer wish to have [E.G.] enrolled." Trial Court Opinion, 11/25/14, at 2. Furthermore, the trial court determined that Mother is more likely to encourage and permit continuing contact with Father; provides stability and continuity in E.G.'s education, family life, and community life; and is more likely to maintain a stable and consistent relationship with E.G.. *Id*. at 2-3. The 2014 Custody Order therefore granted Mother and Father shared legal custody and joint decision-making with regard to E.G.'s health, welfare, religious training and upbringing. The 2014 Custody Order, however, awarded Mother sole legal custody as to all decisions regarding E.G.'s education and/or daycare. All other aspects of the 2011 Custody Order remained in effect.[3]

On December 23, 2014, Father filed a timely notice of appeal and a concise statement of reasons relied on appeal pursuant to Rule 1925(b) of

---

[3] The 2014 Custody Order also struck Paragraph 10 of the 2011 Custody Order, which provided instructions in the event E.G.'s daycare was closed or the child was unable to attend daycare on that day. This modification is not relevant for purposes of this appeal.

the Pennsylvania Rules of Appellate Procedure.[4]  On appeal, Father raises

the following issues for our review, which we have reordered:

> 1. Is it in the best interest of [E.G.] that [] [F]ather is not being allowed to be an equal parent in her life based on allegations of errors of the past made and not based on present fitness and the probabilities of the future?  Trial court judge denied [F]ather shared custody indicating that he thought so.
>
> 2. Should a loving father not be allowed to be an equal parent to his daughter [E.G.] and not be granted shared custody just because [] [M]other dislikes [] [F]ather and is willing to say anything to disparage [] [F]ather [Transcript 9-23-11 pages 138-39)?  Is that in the best interest of [E.G.]? Trial court judge denied [F]ather shared custody indicating that he thought so.
>
> 3.  Is it not conceivable that the judge was swayed by [M]other's testimony because she is a woman, teacher, and mother represented by YWCA Legal Services who normally represent abused women?  Is it not conceivable that this bias weighed heavily on the mind of Hon. Judge Evans and clouded his

---

[4]  We note that this case was delayed for panel listing because of delays by the Dauphin County Court of Common Pleas.  The trial court refused to complete the transcripts at the County's expense, despite Father's in forma pauperis status.  On January 15, 2015, this Court entered an order requiring the trial court to complete the transcripts free of charge within twenty-one days.  The trial court failed to comply with the twenty-one day deadline.  On February 23, 2015, this Court's Prothonotary issued a delinquent record notice.  The trial court thereafter sent the certified record on February 27, 2015, but the record did not contain an opinion pursuant to Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure.  On March 13, 2015, this Court directed the trial court to file a Rule 1925(a) opinion and vacated the briefing schedule.  The briefing schedule was reactivated on March 17, 2015, after the trial court provided a supplemental record with a statement in lieu of a Rule 1925(a) Opinion.  This case was then further delayed for panel listing due to requests for extensions of time by the parties and a dispute between the parties regarding proper service.

judgment? Is that in the best interest of [E.G.]? Trial court judge ignored [F]ather's testimony along with those of his friends Margaret Vincent, James LeValley, Matthew Campbell and Peter Kruia, father Suresh Goklaney, aunt Manju Rajagopalan, mother Reshma Goklaney, sister Nisha Chivukula indicating that we was a very good father and shared a loving bond with his daughter.

4. Is [] [F]ather's testimony that he reads, prays, teaches, feeds, plays, bathes, changes diapers, and loves and comforts his daughter [E.G.] less credible than [] [M]other because [M]other is a school teacher whereas [F]ather is looking for employment? Trial court judge denied [F]ather shared custody indicating that he thought so.

5. Is it in [E.G.'s] best interest that she should not be allowed to travel to India to visit with her paternal grandparents and the rest of [] [F]ather's family or is that more in the interest of satisfying [] [M]other's unfounded fear that [E.G.] may not return? Is it fair to [E.G.] that she should be cut off from [] [F]ather's family because of [] [M]other's unfounded fear? Trial court ordered that [E.G.] should not leave the United States without court order and that no passport issue to her indicating that he thought so.

6. Is there an automatic presumption that all immigrant parents in a child custody situation from non[-]Hague [C]onvention countries will take their children to visit their country of birth never to return? Is it in [E.G.'s] best interest that she should not be able to see her paternal grandparents and family just because [] [F]ather was born and immigrated from India, a country that has not yet signed the Hague Convention? Trial court ordered that [E.G.] should not leave the United States without court order and that no passport issue to her indicating that he thought so.

Father's Brief at 6-7.

Our standard of review of a custody order is well settled.

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*R.L.P. v. R.F.M.*, 110 A.3d 201, 207-08 (Pa. Super. 2015) (quoting *C.R.F.*, *III v. S.E.F.*, 45 A.3d 441, 443 (Pa. Super. 2012)).

The Child Custody Act provides that with any petition to modify a custody order, the trial court must determine if the modification serves the best interest of the child. 23 Pa.C.S.A. § 5338. When the modification entails a change to an award of custody, the trial court, in determining the best interest of the child, must consider seventeen factors as set forth at 23 Pa.C.S.A. § 5328(a). *See M.O. v. J.T.R.*, 85 A.3d 1058, 1062 (Pa. Super. 2014). As a general rule, mere consideration of the factors is insufficient as "[s]ection 5323(d) [of the Child Custody Act] provides that a trial court 'shall delineate the reasons for its decision on the record in open court or in a

written opinion or order.'" ***A.V. v. S.T.***, 87 A.3d 818, 823 (Pa. Super. 2014) (citations omitted); 23 Pa.C.S.A. § 5323(d).

In this case, both Mother and Father requested the trial court to modify the 2011 Custody Order. Mother sought a change to the award of legal custody, while Father sought a change to the award of physical and legal custody. Thus, because the modification entailed a change in custody, the trial court was required to consider the section 5328(a) factors and delineate its rationale with regard to the factors on the record or in its written opinion. ***See*** 23 Pa.C.S.A. § 5323(d); ***M.O.***, 85 A.3d at 1062. The trial court did not do so in this instance. Rather, in its written opinion, the trial court only provided an analysis of five of the seventeen factors. Ordinarily this Court would be required to remand this case back to the trial court for an analysis of all factors. ***See S.W.D. v. S.A.R.***, 96 A.3d 396, 406-07 (Pa. Super. 2014) (Holding that a trial court's failure to address all of the § 5328(a) factors constitutes an abuse of discretion, and requires the case be remanded for an analysis of all factors.); ***see also J.R.M. v. J.E.A.***, 33 A.3d 647, 652 (Pa. Super. 2011). Our review of the record, however, reveals that remanding the case to the trial court is unnecessary in this instance, as Father has waived all issues for review.[5]

---

[5] It is well settled that

> [w]hile this [C]ourt is willing to liberally construe
> materials filed by a pro se litigant, we note that

For his first issue on appeal, Father claims that the trial court denied Father shared custody "based on allegations of errors of the past made and not based on present fitness and the probabilities of the future[.]" Father's Brief at 6. Although Father does not specify what "allegations of errors" he is referring to, from what we can discern from Father's brief, Father is claiming that the trial court improperly relied upon testimony regarding past abuse committed by Father against Mother in reaching its determination. **See id.** at 18-19. Father, however, did not raise this issue in his 1925(b) statement, and accordingly, it is waived. **See Dietrich v. Dietrich**, 923 A.2d 461, 463 (Pa. Super. 2007) ("When an appellant files a Pa.R.A.P. 1925(b) statement, any issues not raised in that statement are waived on appeal.").

For his next two issues on appeal, Father questions whether the trial court's decision to deny shared custody was in the best interest of E.G. **See** Father's Brief at 6-7. Father specifically claims that the trial court denied Father shared custody because Mother dislikes Father and because the trial

---

> appellant is not entitled to any particular advantage because []he lacks legal training. Further, any layperson choosing to represent himself in a legal proceeding must, to some reasonable extent, assume the risk that his lack of expertise and legal training will prove his undoing.

**Rich v. Acrivos**, 815 A.2d 1106, 1108 (Pa. Super. 2003) (quotations and citations omitted).

court was biased in favor of Mother since she is a woman, a teacher, and represented by the YWCA. *Id.*

Upon review, we conclude that we need not address the merits of Father's claims in this instance because Father failed to develop an argument in support of his claims in accordance with Rule 2119(a) of the Pennsylvania Rules of Appellate Procedure. Rule 2119(a) provides that "[t]he argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part—in distinctive type or in type distinctively displayed—the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent." Pa.R.A.P. 2119(a). "Citations of authorities must set forth the principle for which they are cited." Pa.R.A.P. 2119(b). "Appellate arguments which fail to adhere to these rules may be considered waived, and arguments which are not appropriately developed are waived. Arguments not appropriately developed include those where the party has failed to cite any authority in support of a contention." *Coulter v. Ramsden*, 94 A.3d 1080, 1088 (Pa. Super. 2014) (quoting *Lackner v. Glosser*, 892 A.2d 21, 29-30 (Pa. Super. 2006)).

In this case, Father did not divide the argument portion of his brief into as many parts as there are questions to be argued. Although Father presented six issues on appeal, the argument portion of his brief only contains three distinct parts. Moreover, Father did not present any

argument, discussion, citation to authority, or analysis relative to issues two and three. Father's failure to develop an argument for appeal precludes meaningful review by this Court, and as a result, we conclude that issues two and three are waived.

For his fourth issue on appeal, Father contends that the trial court denied him shared custody because it found Father's testimony that he cares for and loves E.G. less credible than Mother's testimony. Father's Brief at 6. Father's brief, however, contains nothing more than a summary of the testimony at the 2011 custody hearings and asks this Court to find that the trial court improperly weighed the testimony in reaching its 2011 Custody Order. *Id.* at 20-21.

Father is challenging the findings of fact made by the trial court in connection with the 2011 Custody Order. This he cannot now do, as he was required to challenge those rulings, if ever, within thirty days of the 2011 Custody Order pursuant to Rule 903(a) of the Pennsylvania Rules of Appellate Procedure. *See* Pa.R.A.P. 903(a) ("Except as otherwise prescribed by this rule, the notice of appeal required by Rule 902 (manner of taking appeal) shall be filed within 30 days after the entry of the order from which the appeal is taken."). His attempts to do so are untimely and accordingly, Father's fourth issue is waived.

Father has waived his fifth and sixth issues on appeal for the same reason. In these final two issues, Father challenges the trial court's order

preventing E.G. from obtaining a passport or from traveling outside of the United States without court order. Father's Brief at 21-22. Father contends that the trial court improperly presumed that he would abduct E.G. because India is not a party to the Hague Convention. *Id.* at 21.

The 2014 Custody Order, however, made no corrections or additions to the portion of the 2011 Custody Order that originally prevented E.G. from obtaining a passport and from traveling outside of the United States. Father did not appeal that portion of the 2011 Custody Order, and any appeal now is untimely. *See* Pa.R.A.P. 903(a). Furthermore, a review of the record reveals that Father did not present any new argument at the 2014 custody hearings or in his brief to alter the trial court's 2011 findings of fact or to warrant a modification to the 2011 Custody Order. Father's argument on appeal is limited to simply contesting the accuracy of Mother's statements from a 2011 custody hearing. *See id.* at 21-22. As previously discussed, the 2011 Custody Order is not presently before this Court, and any attempt to appeal the trial court's determination in that order is untimely. *See* Pa.R.A.P. 903(a). We therefore conclude that Father has waived his fifth and sixth issues for appeal.

Given our determination that Father has not preserved any issues for appeal, we need not remand this case to the trial court for an analysis of the remaining factors under section 5328(a).

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/9/2015