J-A32015-14

2015 PA Super 29

R.L.P.,                                  :      IN THE SUPERIOR COURT OF
    Appellant                        :             PENNSYLVANIA
                                          :
            v.                         :      No. 1540 EDA 2014
                                          :
R.F.M.                                    :

Appeal from the Order Entered October 14, 2014
in the Court of Common Pleas of Montgomery County
Family Division, at No. 2010-06638

BEFORE: PANELLA, J., OLSON, J., and FITZGERALD[*], J.

OPINION BY PANELLA, J.                    **FILED FEBRUARY 11, 2015**

Initially, the trial court entered an order in this custody case that directed the court reporter to transcribe as the custody order 46 pages of trial transcript. Mother filed an appeal from the order directing transcription and we entered an order stating that an order directing the transcription of the notes of testimony is not an appealable order and directing the trial court to enter a separate custody order. The trial court complied with our directive. The custody order awarded shared legal custody of L.M. [Child], born to the parties in May 2007, primary physical custody to Mother, partial physical custody to Father, and made provisions for vacations and holidays. We affirm the custody order. We publish to clarify Rule 1915.10(b) of the Pennsylvania Rules of Civil Procedure to insure that the terms and intent of future custody orders are clear: We hold that, in order to be sufficiently

---

[*] Former Justice specially assigned to Superior Court.

specific to be enforced, an order of custody must be entered as a separate written order, or as a separate section of a written opinion.

Before we address the merits of this case, we must dispose of a question of procedure.[1]  The trial court conducted a hearing in this matter on April 14, 2014.  The next day, the trial court delivered its decision in open court, stated the reasons for its decision, and rendered its order in the case. The trial court then entered an order on the following day directing the court reporter to transcribe the "Order Portion of the Notes of Testimony which shall constitute the Order of the Court."  Order, filed 4/16/14.  Mother filed a notice of appeal from the April 16 order.  This Court responded to Mother's appeal by entering the following order:

> This appeal has been taken from the April 1[6], 2014, Order in custody that directs the court reporter to transcribe the notes of testimony that shall constitute the order of the court.  The April 1[6], order is not appealable or enforceable.  **See** Pa.R.A.P. 102 (an order is defined as a judgment, decision, decree, sentence and adjudication).  The rule does not define an order as the transcribed notes of testimony.  **See also** Pa.R.A.P. 301(b) (every order shall be set forth on a separate document). Therefore, the trial court is directed to enter an order of court in this matter within fourteen (14) days, no later than June 6, 2014.

Superior Court Order, 5/23/14.[2]

---

[1]  Mother raises this question as her first issue on appeal.  We consider it significant enough to discuss it as a threshold matter.

[2]  Mother's appeal is, nonetheless, timely.  Rule 905 of the Pennsylvania Rules of Appellate Procedure states, in pertinent part, that "[a] notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the

The transcribed notes of testimony from the hearing on April 14, 2014, a total of 46 pages, were entered on the trial court docket on May 20, 2014. According to the trial court, in its opinion, "[t]he order portion of the Notes of Testimony were transcribed and entered upon the docket on May 20, 2014. Therefore, the actual Custody order was entered upon the docket on May 20, 2014." Trial Court Opinion, 6/20/14, at 1.

The trial court did not enter a written order by the June 6, 2014, deadline set by this Court in the order entered May 23, 2014. However, after additional urging from this Court, the trial court finally entered a two-page order of custody on October 14, 2014.

In its opinion, the trial court explained why the transcript filed on May 20, 2014, was lengthy:

> A Custody Order has to consider the 16 custody factors set forth at 23 Pa.C.S.A. § 5328(a). Therefore, in many cases, the Order discussing these custody factors will be lengthy. The reason the Order was 48 pages was because the [c]ourt addressed each of these custody factors. It would be error not to have addressed these factors.

*Id*., at 4.

Rule 1915.10 of the Pennsylvania Rules of Civil Procedure governs a trial court's decision and order and provides, in pertinent part:

**Rule 1915.10. Decision. Order**

---

day thereof." Pa.R.A.P. 905(a)(5). We have corrected the appeals statement on the caption.

(a) The court may make the decision before the testimony has been transcribed. The court shall state the reasons for its decision either on the record in open court, in a written opinion, or in the order.

(b) The terms of the order shall be sufficiently specific to enforce the order.

Pa.R.C.P. 1915.10(a)-(b).

Our concern with the trial court's transcript is that it is not "sufficiently specific to enforce the order." The portion of the transcript in which the trial court recites its order begins on page twenty-one and covers the following twenty-seven pages. It includes exchanges between the trial court and the parties such as this:

THE COURT: Okay. Is it any issue for you, Dad, to get [Child] to school on Wednesday if I give you that overnight?

[Father]: Back to North Penn for school?

THE COURT: Yes.

[Father]: It will be difficult but I could try to work it out.

THE COURT: Okay. If you can work it out you will have [Child] overnight on Tuesday and take him to school on Wednesday.

N.T., 4/16/14, at 23.

It also includes this passage:

THE COURT: Dad will have alternate weekends. And those weekends will be alternated from . . . [sic] the one weekend will be alternated from Thursday after school until Monday morning. The other weekend will be alternated from Friday after school to Monday morning. And I am trying to keep this in line with having whole weekends instead of splitting weekends down the middle, which especially with summer coming can be very disruptive to the child's schedule.

[Attorney for Mother]: I was going to ask: After week four to week one, do you want to do it that way?

THE COURT: Here's what we are going to do. And I'm sorry, I am confusing myself now. Every Tuesday dad is going to have overnight until Wednesday, take the child to school on Wednesday. Every other weekend he will have from Friday after school until Monday morning. In the opposite weeks, he is going to have Thursday overnight to Friday. And dad's weekend will necessarily include the weekend that mom is working so you will alternate from that.

*Id*., at 25-26.

As well as this:

THE COURT: Are there any other particular issues that either side wants me to address?

(Discussion was held off the record at this time.)

[ATTORNEY FOR MOTHER]: Your Honor, are you asking about the schedule that you just made in particular?

THE COURT: Any issues?

[ATTORNEY FOR MOTHER]: Is this a year-around schedule, or are you going to break it into a school year versus summertime?

THE COURT: With an exception. Since mom works Tuesdays, two Thursdays a month, and Friday during the day, it seems to me that mom is not going to be with the child. Of course dad isn't either. But there is no reason that [Stepmother] can't be with [Child] during the day when she is off and mom works. So, on Tuesdays that lead up to dad's overnight, instead of picking the child up after school, if somebody wants to pick him up Tuesday morning so that [Stepmother] can have [Child] all day Tuesday, that's fine. Same with the Tuesdays that mom works and the Fridays that mom works. Well, she works every Friday 7:00 to 3:00. And then he can be returned to mom by the normal time that would be after school, in other words, four o'clock, if [Stepmother] chooses to have him on the days that mom works.

[ATTORNEY FOR FATHER]: Excuse me, Your Honor. We are therefore giving [Stepmother] custody?

THE COURT: No, I am letting her take care of the child in lieu of dad and mom. Who should I give custody to when mom is not available and dad is not available?

[ATTORNEY FOR MOTHER]: What mom has always done. Mom has family that are closer than [Stepmother].

THE COURT: [Stepmother] is a step-parent now, okay.

[ATTORNEY FOR MOTHER]: So is [Mother's paramour] Sometimes he is home during the day.

THE COURT: Not a step-parent. Not a step-parent.

[ATTORNEY FOR MOTHER]: Your Honor, may I ask you a question. I think I heard you correctly, on Tuesdays when mom is working and there is no school, I think you said in the next frame again Tuesday and Friday. Did you mean Thursday?

THE COURT: Thursday. The two Thursdays a month that mom works and Fridays. But I don't want to interfere with mom's custodial time, so the child has to be returned to mom Fridays at 4:00 on her weekend. And of course on dad's weekend, you can just keep him through. On the Thursdays when dad has Thursday overnight, [Stepmother] can keep [Child] on Friday and return him at 4:00 to mom. Instead of, since she is not returning to school in the morning, she can return him to mom at four o'clock.

*Id*., at 32-35.

There are more exchanges like these, but the above will suffice to demonstrate that this transcript must be read and re-read to determine exactly which party should have custody at any given time. This "order" is not sufficiently specific to be enforceable.

The trial court's two-page order entered on October 14, 2014, on the other hand, is a model of clarity. It reduces the convoluted, back and forth discussion of April 15, 2014, to two pages of easily understood explanation of which parent has custody and when. Enforcement is possible because the order specifies which party has custody at any given time.

Accordingly, in order to clarify Rule 1915.10(b) to insure that the terms and intent of future custody orders are clear: we hold that, in order to be sufficiently specific to be enforced, an order of custody must be entered as a separate written order, or as a separate section of a written opinion. If entered as a separate section of an opinion, it must be designated as such by the use of the heading entitled "Order." A custody order may not be entered as a transcript from any trial or hearing.[3]

---

[3] In **A.V. v. S.T.**, 87 A.3d 818 (Pa. Super. 2014), this Court explained the following:

"**All** of the factors listed in section 5328(a) are required to be considered by the trial court when entering a custody order." **J.R.M. v. J.E.A.**, 33 A.3d 647, 652 (Pa. Super. 2011) (emphasis in original). Section 5337(h) requires courts to consider all relocation factors. **E.D.**, **supra** at 81. The record must be clear on appeal that the trial court considered all the factors. **Id**.

Section 5323(d) provides that a trial court "shall delineate the reasons for its decision on the record or in open court or in a written opinion or order." 23 Pa.C.S.A. 5323(d). Additionally, "section 5323(d) requires the trial court to set forth its mandatory assessment of the sixteen [Section 5328 custody] factors prior to the deadline by which a litigant must file a notice of appeal." **C.B. v. J.B.**, 65 A.3d 946, 955 (Pa. Super. 2013), *appeal denied*, ___ Pa. ___, 70 A.3d 808 (2013). Section

We now turn our attention to the merits. The record supports the following recitation of the basic facts of this case. Father lives in Coatesville, Pennsylvania, and is married to K.M. (Stepmother). Stepmother is a teacher in the Downingtown Area School District. Father works as a pharmacy technician at Temple University Hospital Monday to Friday from 6:30 a.m. to 3:00 p.m. Mother works as a nurse in the neonatal unit at the Children's Hospital of Philadelphia (CHOP) every Tuesday from 7 a.m. to 7 p.m., every Friday for eight hours, two Thursdays each month from 7 a.m. to 7 p.m., and twelve-hour shifts every fourth Saturday and Sunday. Mother also teaches self-defense once or twice per week for an hour at a time.

Mother lives with her boyfriend, K.S. (Boyfriend), and their son, L.S. (born in November 2011), in North Wales, Pennsylvania. Boyfriend has a

---

5323(d) applies to cases involving custody and relocation. *A.M.S. v. M.R.C.*, 70 A.3d 830, 835 (Pa. Super. 2013).

In expressing the reasons for its decision, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." *M.J.M. v. M.L.G.*, 63 A.3d 331, 336 (Pa. Super. 2013), *appeal denied*, ___ Pa. ___, 68 A.3d 909 (2013). A court's explanation of reasons for its decision, which adequately addresses the relevant factors, complies with Section 5323(d). *Id*.

*Id*., at 822-823.

Our decision today is not intended to in any way abrogate the instruction set forth in section 5323(d) regarding the trial court's reasons for its decision, as explained in *A.V.*, but to address the necessary form of the trial court's custody order.

seven-year-old daughter who lives with Mother and Boyfriend on alternate weekends. Boyfriend works as a karate instructor. He also teaches "stranger danger" and "bully buster" programs at daycare centers.

At the time the parties separated, they had been living in Pottstown, Pennsylvania. The parties never married and separated toward the end of 2009. At the time of the hearing, Mother had primary physical custody of Child and Father had partial physical custody. Child attends first grade in the North Penn School District. The travel time between the parties' households in Coatesville and North Wales is about 75 minutes.

The parties have been litigating this matter since Mother filed a complaint for custody on March 16, 2010. Father commenced this round of litigation when he filed a petition to modify custody in May 2013. The trial court held a hearing on that petition, at which Mother and Father testified, and entered the order complained of on October 14, 2014. Mother filed her notice of appeal and, in response to this Court's order, filed her statement of errors complained of on appeal.[4]

Mother presents the following questions for our consideration:

1. Does the Order entered on April 1[6], 2014 satisfy the requirements of 231 Pa.Code Rule 1915.10[sic][5]?

---

[4] As there was no objection or claim of prejudice from Father, we have accepted Mother's late filing in reliance on our decision in *In re K.T.E.L.*, 983 A.2d 745 (Pa. Super. 2009).

[5] We assume that Mother refers to Pa.R.C.P. 1915.10.

2. Did the trial err by forcing [M]other to relinquish her custody when she is unavailable during her custodial time for a period of four hours or more when [F]ather is unavailable most custodial days, but [Stepmother] is permitted to have custody?

3. Did the trial court err by conferring a custody award onto [Stepmother]?

4. Was it error for the trial court to disallow [Stepmother's] testimony regarding her use of central nervous depressant medication purportedly used during the litigation?

5. Did trial court commit error in disallowing [Stepmother] to testify as to her disagreement with paternal grandfather's wife that resulted in estrangement between grandfather and [Child]?

6. Did trial court err by ignoring the testimony in finding that alienation was "more on mom's side... and it is very subtle"?

7. Did trial court err by disallowing evidence on Motion for Reconsideration?

8. Did trial court err in finding that both parties intentionally moved farther apart from each other in an effort to distance themselves from each other?

9. Did trial court commit error in finding that the parties have equal amounts of support to care for the minor?

10. Did trial commit error by ignoring the differences in school districts of the parents?

11. Did trial court err by glossing over the disruption the order caused to [Child's] relationship with his half-sibling?

Mother's Brief at 4-6.

Our scope and standard of review is as follows:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to

issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*C.R.F., III v. S.E.F.*, 45 A.3d 441, 443 (Pa. Super. 2012) (citation omitted).

We have stated that

the discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

*Ketterer v. Seifert*, 902 A.2d 533, 540 (Pa. Super. 2006) (quoting *Jackson v. Beck*, 858 A.2d 1250, 1254 (Pa. Super. 2004)).

The primary concern in any custody case is the best interests of the child. "The best-interests standard, decided on a case-by-case basis, considers all factors that legitimately have an effect upon the child's physical, intellectual, moral, and spiritual wellbeing." *Saintz v. Rinker*, 902 A.2d 509, 512 (Pa. Super. 2006) (citing *Arnold v. Arnold*, 847 A.2d 674, 677 (Pa. Super. 2004)).

We must accept the trial court's findings that are supported by competent evidence of record, and we defer to the trial court on issues of

credibility and weight of the evidence. ***See J.R.M. v. J.E.A.***, 33 A.3d 647, 650 (Pa. Super. 2011). Additionally,

> [t]he parties cannot dictate the amount of weight the trial court places on evidence. Rather, the paramount concern of the trial court is the best interest of the child. Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.

***S.M. v. J.M.***, 811 A.2d 621, 623 (Pa. Super. 2002) (quoting ***Robinson v. Robinson***, 645 A.2d 836, 838 (Pa. 1994)).

We discussed Mother's first issue, regarding the trial court's order, above.

> Mother begins her second issue by stating:

> Items within matters complained of at numbers 4, 5, 6, 7, 8, 9, 10 and 11 are incorporated herein because they are all objectionable on the same or similar bases, i.e., the court ignored the testimony is [sic] drawing its bald conclusions as set forth within the opinion.

She then recites the types of custody a trial court may order and the sixteen custody factors before concluding:

> It has been held that the appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the reviewing court accept a finding that has no competent evidence to support it. ***Wailers v. Wailers***, 757 A.2d 966, 967 (Pa. Super. 2000).

Mother's Brief, at 12-14.

We find no argument here, simply what appears to be a general complaint that the trial court reached the wrong conclusions on the issues Mother raises in her questions 4, 5, 6, 7, 8, 9, 10 and 11. Mother fails to

- 12 -

develop any legal arguments in her second issue and has waived any claims she might have raised there. "[A]rguments which are not appropriately developed are waived. Arguments not appropriately developed include those where the party has failed to cite any authority in support of a contention." *Lackner v. Glosser*, 892 A.2d 21, 29-30 (Pa. Super. 2006) (internal citations omitted). *See also Chapman-Rolle v. Rolle*, 893 A.2d 770, 774 (Pa. Super. 2006) ("It is well settled that a failure to argue and to cite any authority supporting an argument constitutes a waiver of issues on appeal.").

In Mother's third issue, she claims that the trial court erred in granting custody to Stepmother. We disagree. In its order entered October 14, 2014, the trial court directs:

> (8) [Stepmother] may have custody of [Child] if she is available and both Mother and Father are working. **We stress that this is only when BOTH Mother and Father are unavailable.** Clearly, Mother's and Father's right to custody of [Child] trumps that of [Stepmother] as she is not [Child's] biological parent[.]

Trial Court Order, 10/14/14, at (8) (emphasis in original). The trial court did not err in granting custody to Stepmother at those times when neither Mother nor Father is available to care for Child, especially where, according to the record before us, Stepmother has clearly acted *in loco parentis* to Child. *See* 23 Pa.C.S.A. § 5324. Mother's third issue is without merit.

In her fourth issue, Mother complains that the trial court abused its discretion by finding, in regard to Stepmother, "[t]he use of anti-anxiety or

- 13 -

antidepressant medication alone does not indicate that a person cannot properly care for a child. This may be a different situation if a person was prescribed antipsychotic medication." Trial Court Opinion, 6/20/14, at 6. The trial court also found, "[s]imply because [Stepmother] took anti-anxiety medication during the custody litigation does not affect her ability to care for [Child]. Furthermore, the custody evaluator found that [Stepmother] had taken antidepressants prescribed by her general practitioner." *Id*. Mother does not tell us how Stepmother's use of anti-depressants affected or might have affected her ability to care for Child. Rather, she states that

> [t]he trial court also fails to acknowledge that if [Stepmother] does in fact take anti-depressants, then she may suffer from a psychosis and not just a garden variety neurosis. Nonetheless, the court refused appellant an opportunity to inquire about this matter from the step-mother, and it substituted its opinion in lieu of evidence.

Mother's Brief, at 15.

Mother engages in pure speculation when she suggests that Stepmother may suffer from a psychosis. Nothing in the record supports her contention. We reject it out of hand. Mother then goes on to suggest that the trial court may have prevented Mother's counsel from questioning Stepmother on her use of anti-depressants. But Mother gives us no citation to the record, no context. We are unable to consider her complaint. Mother's fourth issue is without merit.

In her fifth issue, Mother complains that the

[t]rial court likewise decided that it was unimportant to learn why [S]tepmother had a falling out with paternal grandfather's wife that led to the minor being alienated from his paternal grandfather at matter number five in the matters complained of on appeal.

*Id*. Once again, Mother gives us no citation to the record. We have no context in which to consider her complaint. In addition, Mother provides no citation to our law to support her argument and she has, therefore waived it. *See Lackner*.

In her issue number six, Mother complains primarily that the trial court should have interpreted certain evidence regarding Stepmother's actions to favor her rather than Father. This is a claim we cannot review. *See S.M.*.

Mother also complains that the trial court refused to accept documents after trial that she was unable to produce during the proceeding. The trial court responded succinctly and correctly to Mother's complaint, "[i]f these documents existed before the trial, then they should have been available at trial." Trial Court Opinion, at 7. This claim lacks merit.

Mother further alleges, "[i]f the court found the parents to be equally suitable parents, then the [C]hild's uncoached and pure expression of preference for [M]other should have been considered, but it was not." Mother's Brief, at 18. Concerning Child's preference, the trial court found, "[n]o one has asked me to talk to the [C]hild. And I am assuming that that means that neither party feels that the [C]hild is capable of making a mature judgment in terms of where he wants to live or why he likes one

- 15 -

house over the other, et cetera." N.T., 4/15/14, at 3. Mother's claim regarding Child's preference is without merit.

In her eleventh issue,[6] Mother complains "that it was error for the court to disregard the separation of [Child] from his sibling, L.S." Mother's Brief, at 21. The trial court did not disregard the separation of Child from his sibling. The trial court considered the relationship and found:

> The [C]hild has no siblings in dad's house; and in mom's house he has a half sibling with whom apparently he does have a good relationship. The age difference in these two children is not so different that they would not have a relationship with each other as they are growing up.
>
> On the other hand, it seems to me that the time that [Child] is out of the house and away from his little brother is something that kind of segregates their relationship with each other. But I don't at this point in time think that this is a major issue.

N.T., 4/15/14, at 2-3.

Mother makes no legal argument that the trial court erred beyond citing a quote from Jane Austen's novel *Mansfield Park* found in our decision in **Speck v. Spadafore**, 895 A.2d 606 (Pa. Super. 2006), that speaks of the uniqueness of close family ties. **See id**., at 613 ("Children of the same family, the same blood, with the same first associations and habits, have some means of enjoyment in their power, which no subsequent connections can supply ...."). Mother has waived her eleventh issue. **See Lackner**.

---

[6] Mother fails to discuss issues seven, eight, nine and ten in her brief. By failing to discuss them, she has failed to develop a coherent legal argument and she has waived those issues on appeal. **See Lackner**.

Order affirmed.

Justice Fitzgerald joins the Opinion.

Judge Olson files a concurring/dissenting opinion.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/11/2015