J-A02021-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| S.E. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| K.P. | |
| Appellant | No. 1377 MDA 2015 |

Appeal from the Order Entered July 21, 2015,
in the Court of Common Pleas of Luzerne County,
Civil Division, at No: 13005 of 2006

BEFORE:  PANELLA, STABILE, and FITZGERALD,[*] JJ.

MEMORANDUM BY STABILE, J.:                    **FILED APRIL 19, 2016**

K.P. ("Mother") appeals *pro se* from the order entered July 21, 2015,

in the Court of Common Pleas of Luzerne County, which reduced her periods

of partial physical custody with respect to her two minor sons, J.E., born in

January of 2002, and M.E., born in June of 2004 (collectively, "the

Children").[1]  We affirm.

_____

[*] Former Justice specially assigned to the Superior Court.

[1] The trial court did not issue a separate written custody order on July 21,
2015.  Instead, the court issued an opinion in which it indicated that the
previous custody order of February 11, 2014, would remain in effect subject
to certain modifications.  We advise the court that, by failing to enter a
separate written custody order, it ran afoul of this Court's recent holding in
***R.L.P. v. R.F.M.***, 110 A.3d 201, 206 (Pa. Super. 2015) (holding that, "in
order to be sufficiently specific to be enforced, an order of custody must be
entered as a separate written order, or as a separate section of a written
opinion.  If entered as a separate section of an opinion, it must be
designated as such by the use of the heading entitled 'Order.'").  Despite the
trial court's procedural error, we decline to remand this matter for the entry

Mother is the former wife of S.E. ("Father"). Mother and Father married in 1998, and began divorce proceedings in 2006. Since that time, Mother and Father have engaged in a contentious custody dispute, resulting in numerous custody orders, petitions for modification, and petitions for contempt. On February 11, 2014, an order was entered which awarded Father with primary physical custody of the Children, and awarded Mother with periods of partial physical custody on alternating weekends. The order also awarded Mother additional periods of partial physical custody every Tuesday and Thursday afternoon. The order did not make an award of legal custody. However, the order directed that the Children's school would provide Mother with "duplicates of all information concerning the [C]hildren," and that the parents "shall promptly share, with each other, all information concerning the [C]hildren including health, church, extracurricular activities and athletic activities." Order, 2/11/2014, at 6.

Both Mother and Father filed petitions to modify the February 11, 2014 custody order, and several interim custody orders were issued. Finally, the trial court held a custody hearing on June 9, 2015, and June 10, 2015. On July 21, 2015, the court issued its order modifying the February 11, 2014 custody order. Specifically, the court indicated that the February 11, 2014 order would remain in effect, but that Mother would no longer have periods

of a new custody order. It is clear what portion of the trial court's opinion constitutes its "order," and we do not believe that either party will be prejudiced by the court's failure to comply with *R.L.P.*

of partial physical custody every Tuesday and Thursday afternoon. Instead, Mother was awarded with partial physical custody every other Tuesday afternoon until Wednesday morning. The order further provided that Mother and Father would share legal custody with respect to the Children's education, but that Father would have sole legal custody "with respect to the [C]hildren's health and religion . . . ." Trial Court Opinion, 7/21/2015, at 10. Mother timely filed a notice of appeal on July 27, 2015.[2]

Mother now raises the following issues for our review.

Question 1: Did the trial court erred [*sic*] or abuse its discretion allowing testimony without following correct application procedures, untruthfulness under oath, irrelevant facts and failure to notify [Mother] for preparation without counsel[?]

Question 2: Did the court err or abuse its discretion when the hearing was not heard within the 90 day filing of pleading, improper proceures, [*sic*] sending an order to an incorrect address, failure to hear all filed petitions, stating there were 7 modifications, were never heard and violating [Mother's] due process and rights[?]

Question 3: Did the trail [*sic*] court err or abuse its discretion whether in allowing testimony from [the C]hildren without notification to [Mother] prior to hearing, therefore, the Childrens' [*sic*] testimony were surprise witnesses, biased, coached with hearsay statements and took into consideration all [Mother's]

_____

[2] Mother failed to file a concise statement of errors complained of on appeal at the same time as her notice of appeal, in violation of Pa.R.A.P. 1925(a)(2)(i). Mother later filed a concise statement on August 26, 2015, although she was not ordered to do so. Because Father has not claimed any prejudice as a result of Mother's failure to file her concise statement at the same time as her notice of appeal, we will not quash or dismiss her appeal for that reason. *See In re K.T.E.L.*, 983 A.2d 745, 748 (Pa. Super. 2009) (holding that the appellant's failure to comply strictly with Pa.R.A.P. 1925(a)(2)(i) did not warrant waiver of her claims, as there was no prejudice to any party).

witnesses does not impact parenting skills but is currently utilized to as a [*sic*] leverage to maliciously keep the [C]hildren away and the court acting as a medical expert[?]

Question 4: Did the trial court err or abuse its discretion when the courts denied [Mother] the right to shared custody without substantial reasoning, parental equality removed 80% of custody rights without notification violating rights[?]

Question 5: Did the trial court err or abuse its discretion knowing and allowing conflicts in the case, denying a fair trial, change of venue without a hearing and innefective [*sic*] assistance of counsel[?]

Mother's brief at 11-13 (unnecessary capitalization and suggested answers omitted).

Initially, we observe that Mother's *pro se* brief fails to comply with our Rules of Appellate Procedure. Mother's brief is rambling and often incomprehensible, and she fails to present or develop any clear claim of trial court error. While Mother divides the "argument" portion of her brief into separate sections, each section is a hodgepodge of different claims, including alleged trial court bias, due process violations, conflicts of interest, and nefarious behavior on the part of Father, among other things. *Cf.* Pa.R.A.P. 2119(a) (providing that the argument section of an appellant's brief "shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part--in distinctive type or in type distinctively displayed--the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent."). Mother's defective

brief greatly hinders our ability to consider the merits of her appeal, as Mother fails to support any of her issues with coherent legal argument.[3]

Despite the substantial defects in Mother's brief, we decline to quash or dismiss her appeal. *See* Pa.R.A.P. 2101 ("Briefs and reproduced records shall conform in all material respects with the requirements of these rules . . . . [I]f the defects are in the brief or reproduced record of the appellant and are substantial, the appeal or other matter may be quashed or dismissed."). Instead, we attempt to address the merits of Mother's claims to the extent we are able to do so. Our standard of review is well-settled.

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

***V.B. v. J.E.B.***, 55 A.3d 1193, 1197 (Pa. Super. 2012) (citations omitted).

---

[3] Moreover, we observe that Mother's brief far exceeds thirty pages, and she has failed to file a certificate of compliance indicating that the brief is 14,000 words or less. *See* Pa.R.A.P. 2135(a)(1) ("A principal brief shall not exceed 14,000 words . . . . A party shall file a certificate of compliance with the word count limit if the principal brief is longer than 30 pages . . . ."). The excessive length of Mother's brief only serves to compound the problems described *supra*.

"When a trial court orders a form of custody, the best interest of the child is paramount." ***S.W.D. v. S.A.R.***, 96 A.3d 396, 400 (Pa. Super. 2014) (citation omitted). The factors to be considered by a court when awarding custody are set forth at 23 Pa.C.S.A. § 5328(a).

> **(a) Factors.--**In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:
>
> (1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.
>
> (2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.
>
> (2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).
>
> (3) The parental duties performed by each party on behalf of the child.
>
> (4) The need for stability and continuity in the child's education, family life and community life.
>
> (5) The availability of extended family.
>
> (6) The child's sibling relationships.
>
> (7) The well-reasoned preference of the child, based on the child's maturity and judgment.
>
> (8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a).

Here, the trial court issued a thorough opinion addressing nearly all of the Section 5328(a) factors.[4] The court explained that it placed the greatest weight on Section 5328(a)(7), relating to the well-reasoned preference of the Children. The court reasoned as follows.

> This [c]ourt's [*in camera*] interview of the [C]hildren revealed that the [C]hildren are significantly mature. They are happy and content with the status quo. They love both of their

---

[4] The trial court failed to address Section 5328(a)(2.1) in its opinion. However, there was no evidence presented during the custody hearing which related to this factor.

parents and enjoy spending time with [T.] the wife of [Father] and her two sons, one who recently left to join the Coast Guard, but the other who is their age.

They are excelling in their schoolwork and are thriving. They enjoy activities such as lacrosse, football and baseball, which [Father] often coaches. They enjoy attending various events, such as sporting events, which both parents support and encourage.

During the course of receiving both in court and *in camera* testimony, it became apparent to the [c]ourt that the outcome of this case truly turns on the well-reasoned, unique preferences of each of the [C]hildren, based on each child's maturity and judgment. This [c]ourt was impressed with the boys' intelligence, maturity, and ability to express themselves and found the boys to be credible in their testimony. . . .

Both children expressed a desire to continue to see their mother every other weekend but not Tuesdays and Thursdays from after school until 7:30 or in the summer 3:30 to 7:30 P.M. Tuesday and Thursday.

Trial Court Opinion, 7/21/2015, at 4-5.

After a thorough review of the record in this matter, we conclude that the trial court did not abuse its discretion or commit an error of law. Our review of the custody hearing transcripts has uncovered no support for Mother's numerous claims of trial court bias or impropriety. Mother was represented by counsel during the custody hearing, and she was given ample opportunity to call witnesses, present evidence, and argue her case before the court. While Mother requested shared physical custody, it was reasonable for the court to conclude that it would be in the best interest of the Children to maintain primary physical custody with Father. Notably,

Father has had primary physical custody of the Children since January of 2007, and they appear to be doing well in his care.

In addition, the record supports the trial court's decision to reduce Mother's periods of partial physical custody. Both of the Children indicated during their *in camera* testimony that they did not like visiting Mother on Tuesday and Thursday afternoons.[5] N.T., 6/9/2015 (the Children's *in camera* testimony), at 6, 20. The Children explained that these visits hampered their ability to do schoolwork and see their friends, and that "all we really did was go and eat and then watch TV and it's too hectic with sports and stuff." *Id.* at 6, 10, 20. Both of the Children also stated that they would rather spend time with Mother every other weekend. *Id.* at 9-10, 13, 20-22. While Mother claimed during the custody hearing that Father has alienated the Children from her, the trial court was free to reject this testimony, and to conclude that the Children had expressed a well-reasoned preference for spending more of their time with Father.

Accordingly, because we conclude that the record supports the trial court's decision to maintain the Children in the primary physical custody of Father, and to reduce Mother's periods of partial physical custody, we affirm the order of the trial court.

---

[5] At the time of the custody hearing, the Children were no longer attending their Tuesday and Thursday visits with Mother. N.T., 6/9/2015, at 24-25, 47, 50-51, 65, 83-84. Father testified that the Children did not want to attend the visits, and that he did not force them to go. N.T., 6/10/2015, at 18-19, 35-40.

J-A02021-16

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/19/2016