J-A32045-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| J.P.H., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| S.M.R.H., | |
| Appellant | No. 2067 EDA 2016 |

Appeal from the Order Entered June 3, 2016
in the Court of Common Pleas of Montgomery County
Civil Division at No.: 2013-07094

BEFORE:  DUBOW, J., RANSOM, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                      **FILED MARCH 31, 2017**

Appellant, S.M.R.H. ("Mother"), appeals from the order entered on June 3, 2016, which found her in civil contempt and awarded Appellant, J.P.H. ("Father'), counsel fees.  For the reasons discussed below, we affirm.

We take the underlying facts and procedural history in this matter from the trial court's August 1, 2016 opinion.

> The parties are divorced.  They have three children:  (1) [M.H.] (DOB: 10/28/2000), (2) [R.H.] (DOB: 10/15/2003), and (3) [A.H.] (DOB: 7/15/2007).  [M.H.] is entering his sophomore year at Lansdale Catholic High School ("LC").  [R.H.] and [A.H.] attend grade school at Saint Helena in Blue Bell, PA; [RH] is entering seventh grade, and [A.H.] is entering fourth grade.
>
> The children are involved in many activities.  [M.H.] participates in basketball and baseball at LC.  He also

---

[*] Retired Senior Judge assigned to the Superior Court.

participates in baseball in a Wissahickon-area league. [R.H.] plays basketball for Saint Helena, and [A.H.] participates in Girl Scouts.

This case was previously transferred to Montgomery County from Chester County. At some point a few years ago, [Mother] moved into her parents' home in East Norriton (Montgomery County) and enrolled all three children in Saint Helena Elementary School.

In order to be closer to his children, [Father] moved to Blue Bell, PA. His residence was located less than one mile from Saint Helena Elementary School. Thereafter, sometime between August and October of 2014, [Mother] moved [without permission of court] to Collegeville, PA. [Mother] rents her residence.

[The trial court] specifically find[s] that [Mother] moved farther away from the children's school in Blue Bell to spite [Father].

[Father] has since moved from Blue Bell to Lansdale, PA.

In February, 2016, [Mother] unilaterally and suddenly enrolled [A.H.] at South Elementary School in the Perkiomen Valley School District.

[Mother] has repeatedly violated [the trial court's o]rders. She has engaged in outrageous behavior, including denigrating [Father] to third parties (most notably [Father's] mother) and discussing the parties' financial affairs with their children, because she harbors tremendous hostility toward [Father] as a result of the disintegration of their marriage.

(Trial Court Opinion, 8/01/16, at 3-4) (record citations omitted).

The parties entered into an [a]greed [c]ustody [o]rder with respect to their three [] children that was dated [October 22, 2014]. Pursuant to this [o]rder, the parties shared legal custody of their children. They shared physical custody of their two [] sons, and [Mother] had primary physical custody of the parties' daughter.

On [September 9, 2015], [Father] filed a [p]etition for [c]ontempt/[p]etition for [s]pecial [r]elief. In his [p]etition for [c]ontempt, [Father] alleged that [Mother] had violated the [October 22, 2014 c]ustody [o]rder by: (1) failing to conduct custodial transfers at maternal grandparents' house, (2) failing to take the children to a substantial number of the children's scheduled activities while in [Mother]'s custody, and (3) failing to use Our Family Wizard ("OFW") to communicate with [Father].

The [trial court] conducted a contempt hearing on [December 7, 2015]. At the conclusion of that hearing, [it] found [Mother] was in contempt of the [a]greed [c]ustody [o]rder in that she: (1) failed to use OFW to communicate with [Father] and (2) disparaged [Father] to third parties.

The [trial c]ourt informed the parties that [it] would not direct [Mother] to pay [Father's] attorney's fees related to prosecution of the contempt petition. However, [it] stated that the [trial c]ourt would consider directing [Mother] to pay [Father's] attorney's fees, including fees related to the [September 9, 2015 p]etition for [c]ontempt, in the event that [Mother] continued to violate the [a]greed [c]ustody [o]rder.

On [March 15, 2016], [Father] filed another [p]etition for [c]ontempt. In that [p]etition, he alleged that [Mother] was in contempt in that she: (1) failed to provide transportation for the children during her custodial period, (2) had inappropriate communications about [Father] with third parties, and (3) unilaterally enrolled [their daughter] at South Elementary in the Perkiomen Valley School District.

[The trial court] held a hearing on the contempt petition on [May 3, 2016]. At the conclusion of this hearing, [it] found [Mother] in contempt of the [c]ustody [o]rders ([October 22, 2014 agreed order and December 7, 2015 order]). Sanctions were taken under advisement to consider the reasonableness of [Father's] attorney's fees. By [o]rder entered on [June 3, 2016], [the trial court] directed [Mother] to pay [Father's] attorney's fees in the amount of $7,171.25. [The trial court] stated that [Mother] was to pay this amount in $300/month increments until paid in full.

[Mother] filed a [n]otice of [a]ppeal, along with a [concise s]tatement of [errors c]omplained of on [a]ppeal [], on [June 30, 2016. **See** Pa.R.A.P. 1925(b). On August 1, 2016, the trial court issued an opinion. **See** Pa.R.A.P. 1925(a).]

(**Id.** at 1-3) (record citations omitted).

On appeal, Mother raises the following questions for our review.[1]

> A. Did the [c]ourt commit an error of law in finding [Mother] in contempt on June 2, 2016 of the "Modification and Order" consisting of a colloquy transcript from a prior proceeding on December 7, 2015, which was never reduced to a custody order?
>
> B. Did the [c]ourt commit an error of law in issuing a transcript order (presumably under [Pa.]R.C.P. 1915.7) by colloquy without agreement of the parties?
>
> C. Did the [c]court commit an error of law in finding [Mother] in contempt of the [m]odification and [o]rder regarding two-day change of school issue when there was no violation at the time of the contempt hearing on May 3, 2016[,] as the violation had been corrected a full month prior to the filing of the contempt petition?
>
> D. Did the [c]ourt commit an error of law in finding [Mother] in contempt in June of 2016 despite lack of service on [Mother] of the 2015 December [t]ranscript [m]odification and [o]rder?
>
> E. Did the [c]ourt commit an error of law by violating [Mother]'s due process rights when it charged [Mother] for [Father's] attorneys' fees for a finding of contempt without a specific order as required by **R.L.P. v. R.F.M.**, [110 A.3d 201 (Pa. Super. 2015)] or, in the alternative,

_____

[1] While this Court understands the duty to be a zealous advocate, we note that both the Federal and State Courts have longed stated that the raising of a multiplicity of issues on appeal raises the presumption that none have merit. **See Commonwealth v. Small**, 980 A.2d 549, 565 (Pa. 2009) (citing **United States v. Hart**, 693 F.2d 286, 287 n.1 (3d Cir. 1982)).

an order with specific terms and detail as required by 23 Pa.C.S.[A. §] 5323?

F. Did the [c]ourt commit an error of law in awarding compensatory damages to [Father] when [Father] had filed a [p]etition for [c]ontempt one month **after** the two-day alleged violation had occurred and had already been corrected?

G. Did the [c]ourt commit an error of law in making numerous changes to the [c]ustody [o]rder of October 22, 2014 without a pending [p]etition for [m]odification and without ever reducing such changes to a [c]ustody [o]rder that had specific terms and details sufficient to provide [Mother] with notice necessary for a finding of contempt?

(Mother's Brief, at 3-4) (emphasis in original).[2]

In her first issue, Mother argues that the trial court erred in finding her in contempt of the December 7, 2015 order. (**See** Mother's Brief, at 3). Specifically, she states that she lacked proper notice[3] because the December 7, 2015 order was a transcript order, which the trial court did not reduce to a written custody order as this Court's decision in **R.L.P.**, **supra** at 203 ("custody must be entered as a separate written order, or as a separate section of written opinion."), requires in cases of custody modification. (**See** Mother's Brief, at 10-12). We disagree.

_____

[2] Father submitted a letter on September 19, 2016, stating that he would not be filing a brief in this matter.

[3] Mother does not address the fact that she had actual notice of the contents of the December 7, 2015 transcript order because she was present at the hearing. (**See generally**, N.T. Contempt Hearing, 12/07/15, at 54; Transcript Order, 12/07/15, at 4-21).

It is settled that:

> The contempt power is essential to the preservation of the court's authority and prevents the administration of justice from falling into disrepute. When reviewing an appeal from a contempt order, the appellate court must place great reliance upon the discretion of the trial judge. On appeal from a court's order holding a party in contempt of court, our scope of review is very narrow. We are limited to determining whether the trial court committed a clear abuse of discretion.

*Garr v. Peters*, 773 A.2d 183, 189 (Pa. Super. 2001) (quotation marks and citations omitted).

Initially, Mother's implication that the trial court only found her in contempt of the December 7, 2015 order is incorrect. As the trial court specifically notes in its Rule 1925(a) opinion, it found Mother in violation of both the October 22, 2014 agreed order and the December 7, 2015 order. (*See* Trial Ct. Op., at 2).

Mother's argument is premised entirely on her claim that the December 7, 2015 order modified custody, which, under our decision in *R.L.P.*, requires a separate written opinion. (*See* Mother's Brief, at 11-14); *see also R.L.P.*, *supra* at 203. We have thoroughly reviewed the December 7, 2015 order and we disagree with Mother's assertion that the order modified custody. Thus, Mother's reliance on *R.L.P.*, *supra*, is misplaced.

The Official Note to Pennsylvania Rule of Civil Procedure 1915.1(a) states that, "[t]he term custody includes shared legal custody, sole legal custody, partial physical custody, primary physical custody, shared physical

custody, sole physical custody and supervised physical custody. . . ."  *Note*, Pa.R.C.P. 1915.1(a).  The Rule defines the word "custody" as "the legal right to keep, control, guard, care for and preserve a child[.]"  Pa.R.C.P. 1915.1(b).

Under the October 22, 2014 agreed order the parties had shared legal custody of M.H., R.H., and A.H.  (***See*** Agreed Order, 10/22/14, at unnumbered page 1).  The parties split physical custody of M.H. and R.H. on a fifty/fifty basis, and Mother had primary physical custody of A.H.  (***See id.*** at ¶¶ 1-2).  The trial court did not change any of this, a fact that Mother admits.  (***See*** Mother's Brief, at 12).  Mother attempts to argue that the trial court made "ancillary changes" to the agreed order and that this constituted a modification.  (***Id.*** at 13).  Mother never fully explains what these ancillary changes are, but appears to concentrate on two alleged modifications, transportation to activities and school changes.  (***See id.***).

The issue of transportation to activities was at the heart of Father's September 9, 2015 contempt petition.  (***See*** Petition for Contempt, Enforcement, and Special Relief, 9/09/15, at unnumbered page 3 ¶ 13, unnumbered page 5 ¶ 27).  As part of the relief requested, Father specifically sought that the trial court direct Mother to transport the children to their activities during her custodial periods.  (***See id.*** at unnumbered pages 4-5 ¶ 3).  The October 22, 2014 agreed order contained a provision stating that the each party was responsible for transporting the children to

activities during their respective custodial periods. (**See** Agreed Order, 10/22/14, at unnumbered page 1 ¶ 7). However, this provision only covered the 2014-15 school year. (**See id.**). Because of this, the trial court did not find Mother in contempt on this basis. (**See** Trial Ct. Op., at 2; **see also** N.T. Contempt Hearing, 12/07/15, at 111-12). However, it clarified that this provision would continue into the future. (**See** N.T. Hearing, 12/07/15, at 10). Therefore, this was not a modification of the October 22, 2014 agreed order, but merely a reinstatement of what had been the *status quo* during the prior school year.

Moreover, Mother's contention that the trial court made "significant restrictions" to the parties' legal custody rights by not allowing them to change the children's schools, (Mother's Brief, at 12), is a complete misstatement of the record. The trial court did not hold that the parents could not change the children's schools, but that they could not do so **unilaterally**, stating that the children would remain in "their current schools absent written agreement signed by both parties that is specific that they attend another school." (N.T. Hearing, 12/07/15, at 13). Again, this is a merely a clarification a what already was contained in the October 22, 2014 agreed order; since the parents shared legal custody of the children, neither could change their schooling unilaterally. (**See** Agreed Order, 10/22/14, at unnumbered page 1); **see also** Pa.R.C.P. 1915.1(b) (defining legal custody as, "the right to make major decisions on behalf of the child, including, but

not limited to, medical, religious and educational decisions;" and shared legal custody as "the right of more than one individual to legal custody of the child[.]"). Thus, we reject Appellant's contention that the trial court's December 7, 2015 transcript order was a modification order requiring the writing a separate order.[4] Mother's first issue lacks merit.

In her second issue, Mother complains that the trial court committed an error of law in issuing the December 7, 2015 transcript order because there was no agreement between the parties to do so. (*See* Mother's Brief, at 17). Specifically, Mother claims that Pennsylvania Rule of Civil Procedure 1915.7 only allows transcript orders upon agreement of the parties. (*See* Mother's Brief, at 17-18). We disagree.

---

[4] We find Mother's reliance on ***P.H.D. v. R.R.D.***, 56 A.3d 702 (Pa. Super. 2012) to be misplaced. (*See* Appellant's Brief, at 14-15). In ***P.H.D.***, which like the instant matter was a contempt proceeding, the father was not allowed to have unsupervised contact with his children. *See P.H.D.*, *supra* at 703-04. After hearing testimony that the father had attended a band concert that one of the children performed in, the trial court declined to find the father in contempt, but "clarified" the custody order to "mandate that [the father] may not appear at activities or places where the children would reasonably expect to be at a certain time." (*Id.* at 705; *see id.* at 704-05) (internal quotation marks omitted). On appeal, this Court found the order to be a modification rather than a clarification because it placed "new and severe restrictions" on Father's movements "at all times in the community at large." (*Id.* at 707). Thus, we held that the trial court could not impose such restrictions absent the filing of a petition to modify. (*See id.* at 707-08). Here, there were no such severe restrictions placed on Mother. Rather, as discussed above, the trial court merely reinstated the *status quo* with respect to the transportation issue and explained to Mother what should have already been clear after the signing on the October 22, 2014 agreed order, that because the parties share legal custody, Mother cannot unilaterally change the children's schools.

Rule 1915.7 provides, "[i]f an agreement for custody is reached and the parties desire a consent order to be entered, they shall note their agreement upon the record or shall submit to the court a proposed order bearing the written consent of the parties or their counsel." Pa.R.C.P. 1915.7. In her undeveloped argument, Mother fails to explain how this rule is in any way applicable to the December 7, 2015 contempt proceeding. To the extent that we can interpret her argument, it is again based on her mistaken belief that the December 7, 2015 transcript order modified custody, a claim we have already rejected. Here, there was no agreement reached, instead the trial court found Mother in contempt. Thus, Mother's second issue lacks merit.

In her third issue, Mother claims that the trial court erred in finding her in contempt because she only unilaterally changed A.H.'s school for two days before returning her to her old school, and, therefore, the issue was moot at the time Father filed the petition. (*See* Mother's Brief, at 19). We disagree.

Initially, we are unpersuaded by Mother's attempt to sanitize her conduct with respect to this claim. (*See* Mother's Brief, at 19-21). On December 7, 2015, the trial court clearly and specifically told Mother that she could not unilaterally change the children's schools. (*See* N.T. Hearing, at 13). On February 16, 2016, a little more than two months later, Father received a message that Mother had unilaterally placed A.H. in a new school.

(*See* N.T. Contempt Hearing, 5/03/16, at 28). Father attempted to resolve the problem by showing the new school the custody order, but was unsuccessful. (*See id.* at 28-29). Father then contacted his attorney and counsel was able to resolve the situation and have A.H. returned to her old school. (*See id.* at 33). Thus, it is evident from the record that Mother flagrantly violated both the October 22, 2014 agreed order and the December 7, 2015 transcript order. This is not a case where Mother immediately realized that she was in error and *sua sponte* returned A.H. to her old school. Rather, it took Father's protest and the involvement of counsel to persuade Mother to obey the prior court orders.

The trial court aptly discussed this issue as follows.

> To sustain a finding of civil contempt, the complainant must prove certain distinct elements: (1) that the contemnor had notice of the specific order or decree which he is alleged to have disobeyed, (2) that the act constituting the contemnor's violation was volitional, and (3) that the contemnor acted with wrongful intent. [*See*] *Lachat v. Hinchcliffe*, 769 A.2d 481[, 489] (Pa. Super. 2001) (citation omitted). To be punished for contempt, a party must not only have violated a court order, but that order must have been "definite, clear, and specific-leaving no doubt or uncertainty in the mind of the contemnor of the prohibited conduct." *Id.* [(emphas omitted)].

> Here, [the trial court] concluded that [Father] satisfied the elements necessary to demonstrate a finding of civil contempt. [Mother] had notice of the [December 7, 2015 o]rder as she was present in [c]ourt while the [o]rder was set forth on the record. [Mother's] violations of the [o]rder dated [December 7, 2015] were volitional and intentional.

> The [c]ontempt [o]rder placed on the record on [December 7, 2015] was definite, clear, and specific. It was straightforward and not convoluted. In placing the [o]rder on the record, [the

trial court] specifically found that [Mother] had violated the [October 22, 2014 a]greed [c]ustody [o]der . . . . [The trial court] specifically stated that the children were to remain enrolled in their current schools absent written agreement signed by both parties that is specific that they attend another school.

Regarding [Mother's] claim that there had been no violation of an order at the time of the contempt hearing on [May 3, 2016,] as any contempt had been corrected, [the trial court] noted on the record during the hearing that one cannot be a little bit in contempt. One either is in contempt or not.

The purpose of contempt sanctions is to punish a contemnor for violation of a court order. Sanctions help maintain the authority of the court. It is in the court's discretion whether to sanction a contemnor.

In the instant case, [Mother] has repeatedly and flagrantly violated [the trial court's o]rders. . . .

[Mother] violated the [c]ontempt [o]rder set forth on the record on [December 7, 2015] by: (1) unilaterally enrolling AH at South Elementary in the Perkiomen Valley School District. . . .

[The Trial Court] find[s] particularly egregious [Mother's] decision to abruptly enroll AH at South Elementary. . . .

A.H. is at such a young age that [the trial court] believe[s] suddenly withdrawing her from Saint Helena's and enrolling her at South Elementary in the middle of a school year (February) was traumatic and confusing.

(Trial Ct. Op., at 6-8) (record citations omitted).

Here, Mother does not dispute that she violated the trial court's order.

(**See** Mother's Brief, at 19). As discussed above, it is evident from the

record that it took the involvement of Father's attorney, presumably at a

cost to Father, to persuade Mother to re-enroll A.H. in her old school. The

relief sought by Father, payment of both the counsel fees from the first

contempt petition, as well as the current one, was not moot.  Mother has not provided any legal support[5] for her novel notion that a party can violate a court order with impunity so long as she ceases her contemptuous activity before the other party files a contempt petition with the court.  As the trial court did not abuse its discretion or commit an error of law in finding Mother in contempt for this violation of its prior orders, Mother's third issue lacks merit.

In her fourth issue, Mother contends that the trial court erred in finding her in contempt because it did not serve the December 7, 2015 order on her properly.  (**See** Mother's Brief, at 21).  We find that Mother waived this claim.

Mother's argument is undeveloped.  Mother's short argument on this issue is again dependent on her previously rejected claim that the contempt proceeding was actually a modification proceeding.  (**See** Mother's Brief, at 23).  While Mother cites to some boilerplate law that a contemnor must have clear and specific notice of the prohibited conduct, (**see id.**), she fails to cite to any law supporting her argument that actual notice[6] of the prohibited

---

[5] This Court will not act as counsel and will not develop arguments on behalf of an appellant.  **Bombar v. West American Insurance Company**, 932 A.2d 78, 94 (Pa. Super. 2007).

[6] We reject Mother's argument that she could not have been expected to understand "such an unwieldy order."  (Mother's Brief, at 23).  As discussed above, that the entirety of the prohibited conduct was already in writing as it
*(Footnote Continued Next Page)*

conduct is insufficient. (*See id.* at 22-24). It is long-settled that failure to argue and to cite any authority supporting the argument constitutes a waiver of the issue on appeal. *See Jones v. Jones*, 878 A.2d 86, 90 (Pa. Super. 2005). This Court will not act as counsel and will not develop arguments on behalf of an appellant. *See Bombar*, *supra* at 94. When deficiencies in a brief hinder our ability to conduct meaningful appellate review, we can dismiss the appeal entirely or find certain issues to be waived. *See* Pa.R.A.P. 2101. Because Mother has failed to develop her issue, she waived it. *See id.*; *see also Bombar*, *supra* at 94; *Jones*, *supra* at 90.

In her fifth issue, Mother contends that the trial court erred in finding her in contempt and awarding counsel fees when there was no specific written order. (*See* Appellant's Brief, at 24). We disagree.

_____
*(Footnote Continued)*

was included in the October 22, 2014 agreed order. That order mandated shared legal custody of the children (thus prohibiting unilaterally changing the children's schools); described the transportation agreement, which the trial court merely extended beyond the 2014-15 school year in the December 7, 2015 order; prohibited the parties from disparaging each other to third parties and/or the children; and mandated the use of the OFW program for communications. (*See* Agreed Order, 10/22/14, at unnumbered pages 1-4). Thus, there was nothing new discussed during December 7, 2015 proceeding that Mother was required to understand. So long as she remained in compliance with the custody order she had agreed to over one year prior to the December 2015 hearing, she could not have been found in contempt in May 2016.

Mother's argument on this issue suffers from the same fatal flaws as her argument on the first issue, her mistaken belief that the contempt proceedings were custody modification proceedings within the meaning of 23 Pa.C.S.A. § 5323 and our decision in *R.L.P.*, *supra*. As we have sufficiently explained our reasoning for rejecting this theory above, there is no need to discuss it further.

Mother also appears to argue that the award was excessive and was inappropriately punitive. (Mother's Brief, at 25). However, Mother waived these claims as she neither included them in her Rule 1925(b) statement nor in her statements of the questions involved. (*See* [Pa.]R.A.P. 1925(b) Statement of Errors Complained of on Appeal, 6/30/16, at 8; Mother's Brief, at 4). As amended in 2007, Pennsylvania Rule of Appellate Procedure 1925 provides that issues that are not included in the Rule 1925(b) statement or raised in accordance with Rule 1925(b)(4) are waived. *See* Pa.R.A.P. 1925(b)(4)(vii); *see also Commonwealth v. Lord*, 719 A.2d 306, 308 (Pa. 1998), *superseded by rule on other grounds as stated in Commonwealth v. Burton*, 973 A.2d 428, 431 (Pa. Super. 2009). Moreover, the Rules of Appellate Procedure provide that issues to be resolved must be included in the statement of questions involved or "fairly suggested" by it. Pa.R.A.P. 2116(a). These issues are not included in the statement of questions

involved, nor are they "fairly suggested" by it.  Thus, we hold that Mother has waived these claims.[7]

Mother's sixth and seventh issues are merely repetitions of her previous first and third arguments, with the exception of, instead of complaining that the trial erred in holding her in contempt, she complains it erred in awarding counsel fees.  (**See** Mother's Brief, at 25-29).  To the extent that Mother duplicates her arguments discussed above, we decline to address them further.  We note that our standard of review for an order awarding counsel fees as a sanction for civil contempt is as follows:

> Attorney fees may be assessed as a sanction for the contemnor's refusal to comply with a court Order, causing the innocent party to incur fees in an effort to obtain what was rightfully his.  **See** 42 Pa.C.S.A. § 2503, **Right of participants to receive counsel fees; Rhoades v. Pryce**, 874 A.2d 148 (Pa. Super. 2005), *appeal denied*, 587 Pa. 724, 899 A.2d 1124 (2006), (holding attorney fees may be awarded as a sanction to compensate the contemnor's adversary for injuries resulting from the contemnor's noncompliance with a court Order); **see also Goodman v. Goodman**, 383 Pa. Super. 374, 556 A.2d 1379, *appeal denied*, 523 Pa. 642, 565 A.2d 1167 (1989).

**Harcar v. Harcar**, 982 A.2d 1230, 1234 (Pa. Super. 2009) (one citation omitted).

After a thorough review of the briefs, record, and relevant authority, we find that there is no merit to Mother's contentions.  At the December 7,

---

[7] In any event, Mother's argument is undeveloped as it consists of three sentences.  (**See** Mother's Brief, at 24-25).  Thus, these claims are waived for this reason as well.  **See Bombar**, **supra** at 94; **Jones**, **supra** at 90.

2015 hearing, the trial court specifically warned Mother that she was in contempt of the October 22, 2014 agreed order. (*See* Transcript Order, 12/07/15, at 7-8, 16). It further put Mother on notice that, while it would not award counsel fees that day, if there were any further intentional violations of the orders, it retained the right to award counsel fees both for the December 7, 2015 proceeding and any future proceedings. (*See id.* at 16-17). Despite this, within weeks of the December 2015 proceedings, Mother continued to disparage Father to third parties and unilaterally removed A.H. from school. (*See* Trial Ct. Op., at 7-9). Moreover, the record reflects that Mother displayed such blatant contempt for the trial court during the May 3, 2016 hearing, that her own counsel had to caution her repeatedly to be quiet and the trial court warned her she was in danger of losing equal custody. (*See* Transcript Order, 5/03/16, at 3, 5-6, 10-13, 15). Thus, the trial court properly imposed the sanction to vindicate its authority and to compensate Father for the bringing of two contempt proceedings caused by Mother's intentional violations of the custody orders. *See Harcar*, *supra* at 1234. Therefore, Mother's final two issues lack merit.

Accordingly, for the reasons discussed above, we affirm the order of June 3, 2016.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/31/2017