J-A16044-17

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| C.W., | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| T.J.T., | : | |
| | : | |
| Appellee | : | No. 1957 WDA 2016 |

Appeal from the Order Entered December 2, 2016
in the Court of Common Pleas of Greene County,
Civil Division, at No(s): 218 AD 2013

BEFORE:  STABILE, J., FORD ELLIOTT, P.J.E., and STRASSBURGER,* J.

MEMORANDUM BY STRASSBURGER, J.:          **FILED SEPTEMBER 19, 2017**

C.W. (Mother) appeals from the December 2, 2016 order that denied her petition to relocate to Washington County with A.A.T. (born in June 2006) and L.M.T. (born in February 2010) (Children, collectively), and established a custody schedule between Mother and T.J.T. (Father).  We affirm.

Mother and Father married in 2005 and divorced in 2015.  They each live in the same school district in Waynesburg, Greene County.  Pursuant to an interim custody order entered by the trial court on December 17, 2015, Mother and Father shared legal custody, Mother had primary physical custody, and Father had substantial periods of partial custody.[1]

---

[1] The schedule provided for alternating periods of nine overnights with Mother and five overnights with Father who lives with his wife, E.P. (Stepmother).  Interim Custody Order, 12/17/2015, at ¶ 3(a).

* Retired Senior Judge assigned to the Superior Court

In April 2016, Mother served Father with a notice of proposed relocation, wherein she indicated that she wished to relocate with Children to Washington County to live with Mother's paramour, D.H., in his home there. Subsequently, Father filed an opposition counter-affidavit, as well as a petition for contempt. The trial court held hearings in August and September 2016, at which it heard testimony from the parties, Children, and other witnesses regarding Mother's petition for relocation as well as Father's pending motions.

On December 2, 2016, the trial court entered (1) an opinion and order denying all of the pending motions, and (2) a custody order providing for shared legal custody between Mother and Father and alternating periods of physical custody of nine overnights with Mother followed by five overnights with Father. Custody Order, 12/2/2016, at 2 (pages unnumbered). Mother timely filed a notice of appeal, and later a statement of errors complained of on appeal.[2]

Mother presents the following questions for this Court's review.

> 1. Did the trial court abuse its discretion and/or err as a matter of law in awarding Father shared legal and shared physical custody (five unsupervised overnight visits with children) of [C]hildren both of whom have suffered since birth from potentially life-threatening allergies to various common foods, and some pets in light of its findings that (a) Father repeatedly "self-tests" this diagnosis subjecting [C]hildren to

---

[2] This Court denied Father's motion to quash the appeal based upon Mother's failure to file her statement contemporaneously with the notice of appeal as required by Pa.R.A.P. 1925(a)(2)(i). *Per Curiam* Order, 1/12/2017 (citing *In re K.T.E.L.*, 983 A.2d 745 (Pa. Super. 2009).

harm (including risk of death); (b) Father repeatedly rejected the advice of [C]hildren's allergy doctor; (c) Father displays an obsession with his son's success at sports to the point of rejecting medical advice when the boy is injured; (d) Father ignored the court's orders to attend counseling and (e) Father resides with and intends to marry a woman who owned brass knuckles, which she attempted to bring into the courtroom[?]

2. Did the trial court abuse its discretion and/or err as a matter of law in rejecting Mother's request to relocate where the proposed relocation would benefit Mother (and therefore [C]hildren) financially, where Mother would benefit emotionally, where Mother and her boyfriend would be in a position to marry, where the relocation would provide [C]hildren with a larger home, a larger yard, and the opportunity to attend a better school and where the relocation would not interfere with Father's relationship with [C]hildren[?]

3. Did the trial court abuse its discretion and/or err as a matter of law in rejecting Mother's relocation request based solely on the wishes of [C]hildren where all other factors establish that relocation is in their best interests[?]

4. Did the trial court abuse its discretion and/or err as a matter of law in rejecting Mother's relocation request where [C]hildren would not be required to change school districts mid-year since Mother, who is employed in the area, could have transported [C]hildren to and from school for the remainder of the year[?]

Mother's Brief at 6-7 (unnecessary capitalization and suggested answers omitted).

We begin with our standard of review.

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed

and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

We have stated that

the discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

**R.L.P. v. R.F.M.**, 110 A.3d 201, 207-08 (Pa. Super. 2015) (citations omitted).

Our legislature has promulgated lists of factors that a court must consider in fashioning a custody award. **See** 23 Pa.C.S. §§ 5328(a). The trial court in the instant case set forth in the opinion filed along with its custody order the statutory factors and the court's findings as to each.

1) Which party is more likely to encourage and permit frequent and continuing contact between child and other party.

Both parties encourage and permit frequent and continuing contact with the other, but it seems, only as is spelled out in a court order. Mother interprets the orders very strictly. Father is compliant in general terms. Both want what they can't have. Mother cooperated in counseling services, but Father would not.

- 4 -

2) Present and past abuse representing a continuing risk of harm to child, and which party can provide adequate physical safeguards and supervision.

Given [C]hildren's allergies, Father presents (at times) a continuing risk of harm to both [C]hildren in that he is willing to "experiment" with things that do/do not, may/may not cause allergic reactions - against medical advice.

3) Parental duties performed by each on behalf of the child.

Both parents are equally capable of performing all the parental duties, except Father will not accept the medical advice of [C]hildren's allergy doctor, which presents a risk.

4) Need for stability and continuity in education, family life and community life.

Given that custody is being considered along with Mother's relocation petition to another home, in another city, and another school district, we must find that with regard to [C]hildren's stability and continuity in education, family life and community life, Mother's current residence, and as the primary physical residence of [C]hildren, is more suitable.

5) Availability of extended family.

Father has extended family that is available as support, but not to any degree that it is an advantage over Mother. Though Mother is from out of the area, she makes every necessary sacrifice to be available to [Children], with her employer[']s understanding and support [] at all times.

6) The child's sibling relationships.

[C]hildren have always been together and maintain their bond with one another. They should not be separated.

They both enjoy Father's new child and their new "half-sister."

7) Well[-]reasoned preference of the child, based on child's maturity and judgment.

[C]hildren are not too young or immature to have an opinion. Both like living with Mother, but neither of them want[s] to move.

They would be ok living with either parent, provided they remain in their current school district and close to their friends and current activities.

Both [C]hildren are anxious about the prospects of relocating.

8) Attempts of a parent to turn child against the other, except in domestic violence cases.

We find neither parent is intentional[ly] attempting to turn a child against the other parent. But they are certainly aware of the parent[s'] fighting, or frustration with each other. There has been no[] domestic violence.

9) Which party [is] more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

[] Children are safe and loved by both families. However, to date, Mother has been the more consistent, and nurturing in her relationship. This is most important, and evident, regarding both [C]hildren's allergies.

[C]hildren have formed a healthy relationship with each parent, and recognize[] each parent as a natural and necessary source of continuing security and love.

10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

We find Mother will. She always has, and we believe she always will. Father wants to, and does try, but certainly comes across as obsessed with his son's success in sports, and in particular wrestling, again, even going so far as to disregard medical advice, when injured.

11) The proximity of the residences of the parties.

In that the residences are only a half hour apart, distance is a non-issue. However, it is an issue and more fully described below, that Mother seeks to relocate to another county, city and school district.

12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

Both parents are now able to be equally available to care for [C]hildren and make appropriate child-care arrangements. However, Mother has always been more involved, and dependable, in this regard.

13) Level of conflict between the parties and the willingness and ability of the parties to cooperate with one another.

Both parties engage in petty behavior, and are unable to communicate adequately. The parents engage in a circular course of conduct that consistently ramps up the tension between them. They know how to "push each other's buttons" -- and they do.

Father barrages Mother with incessant text messages and second guesses her decisions involving [] Children's health.

Mother will not let [] Children put up a picture of their half-sister in her home and will not let Children obtain a cell phone so that they may speak directly with Father.

Father accuses Mother of reading Harry Potter books instead of caring for [] Children.

Mother would not permit Father to have Children for an unscheduled weekend so that they may enjoy a family barbecue.

Both parties presented witnesses that disparaged the other party.

One of the more disheartening testimonies presented was by Father's witness, [B.H.], who attempted to blame Mother's concern for the well-being of [C]hildren on Mother's own childhood experience of abuse.

Neither party presented much evidence [] of cooperation toward resolving any of the several issues that plague their relationship.

That despite the severe lack of communication between both parties, we find that [] Mother is more likely to encourage and permit frequent and continuing contact between [] Children and [] Father.

14) History of drug or alcohol abuse of a party or member of a party's household.

Both parties have accused the other of alcoholism and/or drug use[;], we find it to be non-credible. Though there is the occasional use of alcohol by both parents, and heavier use by Father, it does not in recent years descend into alcohol abuse by either party. There has never been a history of drug abuse with either parent or a current household member.

15) The mental and physical condition of a party or member of a party's household.

The overall mental and physical condition of the parties and other members of their households [is] fine.

16) Any other relevant factor.

[Here the trial court pointed to its analysis of the factors applicable to relocation, discussed *infra.*]

17) Consideration of child abuse and involvement with child protective services.

There has been no child abuse or involvement with child protective services, by either Mother or Father.

18) Parental Bonding Factors

Attachment theory and research has indicated that ongoing parental sensitivity and responsiveness are important elements in the child's continuing development. In making this assessment, the court must consider the

> extent to which a bond exists between the child and parents and, if a bond exists, the impact that severing the bond will have on the child by first evaluating the existence of a bond, then the impact that severing the bond will have on the child.
>
> There is a strong and appropriate bond between [C]hildren and both parents, and they will not be severed, nor should they be.

Opinion and Order, 12/2/2016, at 3-7 (pages unnumbered; unnecessary capitalization omitted).

What is abundantly clear from the above is that the trial court considered and carefully weighed all of the factors relevant to the issues before it. Thus, in order for us to grant Mother relief, she must convince this Court that "the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence in the certified record." *Morgante v. Morgante*, 119 A.3d 382, 386-87 (Pa. Super. 2015). Mother has failed to do so.

With her first issue, Mother claims that the trial court failed to "put measures in place to reduce the possibility of harm to [C]hildren." Mother's Brief at 29. However, the custody order provides that parents "shall both strictly follow the advice of medical providers, chosen by Mother," Custody Order, 12/2/2016, at 1 (pages unnumbered) (unnecessary capitalization omitted), and further mandates that the parties "pursue co-parenting educational and/or counseling program opportunities" and "shall follow the recommendations of any provider to which they are referred." *Id.* at 4.

Mother complains that Father has failed to abide by such requirements in the past, yet fails to acknowledge that the trial court's opinion clearly informs Father that he may not ignore the advice of medical providers regarding Children's health, and the custody order expressly advises Father that he may be held in contempt and subject to imprisonment and/or fines if he fails "to strictly comply" with the order. *Id.* at 6. Mother has come forth with no argument or evidence of record to convince us that her proposal that the trial court require "proof of co-parenting counseling as well as anger management and medical counseling" would be any more effective than the means chosen by the trial court.

Mother's remaining issues challenge the denial of her petition to relocate. Mother first questions whether the move to the home of D.H. in Washington County even fits the definition of a relocation. Mother's Brief at 30-31.

Relocation is defined as a "change in a residence of the child which significantly impairs the ability of a nonrelocating party to exercise custodial rights." 23 Pa.C.S. § 5322(a). Although the distance between Waynesburg and Washington is not far, the move would entail Children residing primarily in a new city, in a new county, and in a new school district. The trial court noted that Father is very involved with Children's school and non-school extracurricular activities, and that, while Children's relationship with Father and his side of the family "could be maintained, it would be less than ideal."

Opinion and Order, 12/2/2016, at 8 (pages unnumbered). Given these facts, we hold that Mother's move qualifies as relocation, and the trial court properly considered the statutory relocation factors. *C.M.K. v. K.E.M.*, 45 A.3d 417, 426 (Pa. Super. 2012) (holding the mother's proposed move 68 miles from the father's residence constitutes a relocation because it "would break the continuity and frequency of" the father's involvement with, *inter alia*, the child's school and sport functions).

Mother next asserts that "since no modification of custody was contemplated by the move and the trial court reaffirmed primary custody in Mother, the trial court had no factual or legal basis upon which to deny Mother's petition." Mother's Brief at 36 (unnecessary capitalization omitted).

The statute governing relocation provides that the "party proposing the relocation has the burden of establishing that the relocation will serve the best interest of the child" as shown by the ten statutory relocation factors. 23 Pa.C.S. § 5337(i). The trial court offered the following discussion of those factors.

> (1) The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the non-relocating party, siblings and other significant persons in the child's life.

> > Mother's proposed place of residence is only about 20 minutes away from her current address, but it would necessarily change [C]hildren's school district, neighborhood, access to friends, and their center of school and non-school related extracurricular activities.

- 11 -

Though [C]hildren's relationship with Father and his other family members could be maintained, it would be less than ideal, particularly in mid-school year.

Both parents are involved as much as possible in [] Children's daily physical, emotional, developmental, education and special needs.

Both parents are able to make appropriate childcare arrangements.

There is no overriding evidence of either parent attempting to turn [Children] against the other.

Both parents are committed to their employment, and though different schedules, both have a continuing, healthy and young stabilizing family life.

(2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.

Both [C]hildren are especially medically sensitive, and needy of care, because of having been born with a potentially fatal allergy to various common foods, and some pets.

Both children are happy, articulate, well-behaved, and emotionally mature.

Both excel in most all manner of schooling, social and extracurricular activities.

Son [] is passionate about (and good at) wrestling.

Daughter [] loves to dance.

They are funny, and affectionate toward each other. No one would ever consider separating them. They are in this together.

Both [C]hildren want to maintain a loving relationship with their Mother and Father, their extended families and their many friends and neighbors.

Both Children have made it clear in interviews on two different occasions that they DO NOT want to relocate. We did not see evidence of either parent inappropriate[ly] coaching them with regard to their preference.

Both [C]hildren are agreeable [to] living with either parent, provided they remain in their current school district and close to their friends and their current activities.

Both [C]hildren are anxious about the prospects of relocating.

Both [C]hildren have a strong interest in maintaining and developing [a] meaningful relationship with [the] noncustodial parent.

Both children want Mommy and Daddy to be happy.

(3) The feasibility of preserving the relationship between the non-relocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.

Money does not create the problems between the parents. Parents have very divergent methods of parenting, and are equally culpable of not communicating adequately as is necessary to preserving the requisite relationships.

In addition to being against Mother's relocation, Father is very unhappy with the current custody arrangement. That he does not have a full half-half [schedule] is offensive to him. And in a manner, this is to his credit. But it is to his discredit, and incredible, that he is willing to continuously self-experiment with [C]hildren's food and pet allergies, and continuously challenge the long-time medical diagnosis, and medical advice.

Father believes that Mother's strict enforcement of [C]hildren's medical advice is obsessive behavior. We think it worthwhile to also note that Father hasn't complied

- 13 -

with our prior orders directing him to enroll and cooperate in counselling services.

Though it hasn't always been perfect, Father currently does have the keen and genuine interest of a noncustodial parent in sharing in the love and rearing of his children.

[C]hildren have been provided a loving, stable and nurturing relationship with both parents.

(4) The child's preference, taking into consideration the age and maturity of the child.

[C]hildren are not too young or immature to have an opinion. Both like living with Mother, but neither of them want[s] to move.

[C]hildren have always been together and maintain their bond with one another.

[C]hildren have formed a healthy relationship with each parent, and recognize[] each parent as a natural and necessary source of continuing security and love.

[] Children feel safe and loved by both families.

(5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.

Both parties engage in petty behavior, and are unable to communicate adequately. The parents engage in a circular course of conduct that consistently ramps up the tension between them. They know how to "push each other's buttons" -- and they do.

Father barrages Mother with incessant text messages and second guesses her decisions involving [] Children's health.

Mother will not let [] Children put up a picture of their half-sister in her home and will not let Children obtain a cell phone so that they may speak directly with Father.

Father accuses Mother of reading Harry Potter books instead of caring for [] Children.

Mother would not permit Father to have Children for an unscheduled weekend so that they may enjoy a family barbecue.

Both parties presented witnesses that disparaged the other party.

One of the more disheartening testimonies presented was by Father's witness, [B.H.], who attempted to blame Mother's concern for the well-being of [C]hildren on Mother's own childhood experience of abuse.

Neither party presented much evidence [] of cooperation toward resolving any of the several issues that plague their relationship.

That despite the severe lack of communication between both parties, we find that [] Mother is more likely to encourage and permit frequent and continuing contact between [] Children and [] Father.

We find no present or past physical abuse by either party or by a member of a party's household.

Both parties have accused the other of alcoholism and/or drug use. We find it to be non-credible. Though there is the occasional use of alcohol by both parents, and heavier use by Father, it does not in recent years descend into alcohol abuse by either party. There has never been a history of drug abuse with either parent or a current household member.

(6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.

Mother is seeking to set up housekeeping with [D.H.], in his home, which is paid for, and where he has lived for decades. It would obviously be cheaper for her, which in turn frees up resources that might be used to benefit

[C]hildren. [D.H.] will not move further south to Waynesburg, because he works to the north.

Mother would benefit emotionally by relocating. She and [D.H.] would then be able to better begin to consider the long term plans of marriage. [C]hildren always benefit by having happy, stable parents, but Mother and [D.H.] now have no immediate plans to marry.

(7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.

Mother believes the relocation will benefit [C]hildren by providing a bigger house, a bigger yard, and the opportunity to attend a "better school."

Father opposes the relocation [], as he believes that before [C]hildren should be allowed to be relocated, he can provide a more stable living circumstance with him, his fiancé and their newborn.

(8) The reasons and motivation of each party for seeking or opposing the relocation.

Both parents are sincere in their reasons and motivations.

Mother desires to relocate in order to live with and further pursue a relationship with her credible boyfriend of 2 years, [D.H.]. [D.H.] is an established, stable and employed individual who has indicated to this court that he wants to provide a long-term home for both Mother and [] Children. [D.H.], however, has also testified that he will not relocate to Greene County due to his employment and family history in Washington County.

Mother proposes to travel to Waynesburg for her employment. It is acknowledged that if Father had primary physical custody, during custody with Mother, she could transport children to Central Greene School, to and from her employment in Waynesburg. There are longer bus rides, in Greene County.

(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.

There are no allegations nor history of abuse.

Neither parent presents a continuing risk of harm.

However we are convinced that Father's fiancé showed at least very poor judgment by attempting to carry with her into the courthouse a set of brass knuckles, which are illegal to possess in Pennsylvania, and which were confiscated by courthouse security.

Generally speaking, each parent performs [his or her] responsibilities well.

(10) Any other factor affecting the best interest of the child.

We note that [C]hildren's health and safety are the paramount consideration in this analysis and as both [C]hildren have been diagnosed since birth with potentially life-threatening allergies to various common foods, and some pets[;] we embrace Mother's strict application of medical advice.

Mother has always been more involved with [] Children's health, education and welfare, and we can't imag[ine] that changing.

Father ignored this court's order to attend counseling.

We also denounce Father's "self-testing" of [C]hildren's allergies, as very risky business, and inappropriate. Father does not know best in this regard. Though [] Father seeking to reduce [C]hildren's dependency on prescription medications is commendable, such a goal can only be done with sound medical advice.

Except for the important allergy issue, Father seems to be really ready to be a father to [C]hildren. However, there is little indication that he is really ready to maturely communicate with [] Mother []. Anger management

- 17 -

counseling would do him, and his former wife, and therefore [C]hildren, well.

But otherwise, both parents are likely to maintain a loving, stable, consistent and nurturing relationship.

Both parents are reasonably available to attend to [Children's] daily physical, emotional and developmental needs.

Both parents are reasonably available to care for [Children], or make appropriate child-care arrangements.

All residences are within a reasonable distance to childcare, but not necessarily to each other.

There are no mental or physical conditions of either party, or a party's household, that restricts their care of the child.

Except for Father's attitude regarding the allergies, both parents are capable of making rational child[-]rearing decisions.

Both parents are able to provide love and care for [C]hildren.

Both parents seek no less than an equal, continuing, active and healthy involvement in [Children's lives].

Opinion and Order, 12/2/2016, at 8-14 (pages unnumbered; unnecessary capitalization omitted).

From the above, it is clear that the trial court had a legal and factual basis for concluding that the relocation would not serve Children's best interests: they both feared and adamantly opposed moving away from their school and friends. *See* 23 Pa.C.S. § 5337(h)(4) (requiring the court to consider "The child's preference, taking into consideration the age and maturity of the child."); Opinion and Order, 12/2/2016, at 10 (pages

unnumbered) ("[C]hildren are not too young or immature to have an opinion."); *id.* at 14 ("[C]hildren have expressed extreme reluctance and anxiety at leaving their school, friends, and half-sister[.]").

Mother next argues that it was an abuse of discretion for the trial court to base its decision "solely on the wishes of children where all other factors establish that relocation is in their best interests." Mother's Brief at 37 (capitalization omitted).

As discussed above, the trial court considered all of the relevant factors in making its decision. Many of the factors were neutral as to Children. The main difference for Children would be the change in neighborhood and school. Because Mother failed to present evidence that the new school district in Washington County is significantly better than their current school district, or that the increase in money available to her in residing with D.H. will improve their quality of life, she offered nothing to outweigh the negative effect the change in schools would have on Children.[3]

While it certainly seems that the trial court believed that Mother would benefit from the relocation, she failed to convince the trial court that the

---

[3] With her last issue, Mother claims that the trial court's reliance upon the fact that Children would have to change schools mid-year was erroneous, because Mother could have driven them to their old school for the remainder of the term. Mother's Brief at 39-40. Because the 2016-2017 school year has been completed, the issue is moot. In any event, the trial court's ultimate determination is not undermined by its observation that that the effects would have been even more harsh on Children had they moved mid-semester; Mother's proposal was only a temporary fix.

move is in Children's best interests.  For the reasons discussed above, we discern no error or abuse of discretion in the trial court's determination.

Order affirmed.

Judge Stabile joins.

PJE Ford Elliott files a dissenting memorandum statement.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/19/2017