J-A01043-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| S.D.H. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| A.H. | : | No. 2426 EDA 2017 |

Appeal from the Order Entered July 5, 2017
In the Court of Common Pleas of Delaware County
Domestic Relations at No(s): 2016-7725

BEFORE: LAZARUS, J., OTT, J., and PLATT*, J.

MEMORANDUM BY OTT, J.: **FILED MARCH 12, 2018**

S.D.H. (Father) appeals from the order entered July 5, 2017, in the Court of Common Pleas of Delaware County, regarding the parties' two children, D.H. and G.H. (Children).[1] The order awards joint legal custody to Father and A.H. (Mother), primary physical custody to Mother, partial physical custody to Father, and permits Mother to relocate from Glen Mills, Delaware

_____

* Retired Senior Judge assigned to the Superior Court.

[1] At the time of the custody hearing on May 1, 2017, Children were ages nine and six. **See** N.T., 5/1/2017, at 60.

- 1 -

County, Pennsylvania, to Honey Brook, Chester County, Pennsylvania, with

Children.[2]  Based upon the following, we affirm.

The trial court has summarized the procedural history of this case, as

follows:

> On or about September 7, 2016, Father filed a Complaint in
> Custody seeking joint legal custody and shared physical custody
> of the parties' two minor children.  Simultaneously, he filed an
> "Emergency Petition to Return Children Relocated Without Notice
> or Consent" requesting the Court to Order Mother to return to
> Delaware County with the children or in the alternative, to return
> the children to Father in Delaware County. Both petitions stated
> that Mother had left Father on or about September 6, 2016, and
> taken the kids to stay with a friend in Honey Brook, PA. On or
> about September 13, 2016, Mother filed an Answer to the
> Emergency Petition seeking primary physical custody and
> supervised partial physical custody to Father. Following a hearing
> on Father's Emergency Petition on September 13, 2016, this Court
> entered a Temporary Custody Order awarding joint legal custody;
> temporary primary physical custody to Mother; and temporary
> partial physical custody to Father each Saturday from 7:00PM
> through Sunday at 7:00PM and each Tuesday from 7:00PM to
> Wednesday before school. The Order also included language that
> the entry of the Order was without prejudice to Father's right to
> object to where the children would attend school; to object to
> Mother's move as constituting a relocation; or for either party to
> pursue primary physical custody.
>
> On or about September 30, 2016, Father filed "Plaintiff/Father's
> Objection to Mother's Relocation of [] Children" as well as
> "Plaintiff/Father's Request for a Hearing Regarding the Relocation
> of [Children]." A pretrial conference was held on November 11,

---

[2] Father's residence in Glen Mills, Pennsylvania, and Mother's residence in
Honey Brook, Pennsylvania, are "approximately 30 miles apart with a drive
time of about 45 minutes to one hour."  Trial Court's Findings of Fact and
Conclusions of Law, 7/5/2017, at ¶21.

2016, …. A trial was held on May 1, 2017 on Father's Petitions. [At the time of trial, Mother had leased an apartment in Honey Brook.] This Court entered its Final Custody Order and Findings of Fact and Conclusions of Law on July 3, 2017.

Trial Court Opinion, 8/30/2017, at 1-2. This appeal timely followed.[3]

In this appeal, Father presents three questions, which we recite verbatim from Father's brief:

1. Did the trial court err as a matter of law or abuse its discretion in failing to correctly apply 23 Pa.C.S.A. § 5337(l), thus creating a presumption in favor of the Appellee-Mother's relocation with the minor children, and improperly shifting the burden of proof away from Mother as the relocating party?

2. Did the trial court err as a matter of law or abuse its discretion in mis-applying or failing to properly consider the relevant factors custody factors in 23 Pa.C.S.A. § 5328(a) and the relevant relocation factors in 23 Pa.C.S.A. § 5537(h) after having created an improper presumption in favor of the relocation and shifted the burden away from Mother as the relocating party?

3. Did the trial court err as a matter of law or abuse its discretion in neither discussing nor considering Mother's complete and repeated failure to comply with statute (23 Pa.C.S.A. § 5337(c)) and rules (Pa.R.C.P. 1915.17) requiring giving notice of a proposed relocation, and in neither discussing nor considering the potential sanctions for such failure provided for in Pa.C.S.A. [§] 5337(j)?

Father's Brief at 24.

Our scope and standard of review is as follows:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition,

---

[3] Father complied with Pa.R.A.P. 1925(a)(2)(i) by filing his concise statement of errors complained of on appeal with his notice of appeal.

- 3 -

with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*C.R.F., III v. S.E.F.*, 45 A.3d 441, 443 (Pa. Super. 2012) (citation omitted).

Furthermore, we are guided by the following principles:

We have stated that

the discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

The primary concern in any custody case is the best interests of the child. "The best-interests standard, decided on a case-by-case basis, considers all factors that legitimately have an effect upon the child's physical, intellectual, moral, and spiritual wellbeing."

We must accept the trial court's findings that are supported by competent evidence of record, and we defer to the trial court on issues of credibility and weight of the evidence.

*R.L.P. v. R.F.M.*, 110 A.3d 201, 207-208 (Pa. Super. 2015) (citations omitted).

"The trial court must consider all ten relocation factors [23 Pa.C.S. § 5337(h)] and all sixteen custody factors [23 Pa.C.S. § 5328(a)] when making

- 4 -

a decision on relocation that also involves a custody decision." ***A.M.S. v. M.R.C.***, 70 A.3d 830, 836 (Pa. Super. 2013).  Moreover,

> Section 5323(d) provides that a trial court "shall delineate the reasons for its decision on the record in open court or in a written opinion or order." 23 Pa.C.S.A. § 5323(d). Additionally, "section 5323(d) requires the trial court to set forth its mandatory assessment of the sixteen [Section 5328 custody] factors prior to the deadline by which a litigant must file a notice of appeal." Section 5323(d) applies to cases involving custody and relocation.
>
> In expressing the reasons for its decision, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." A court's explanation of reasons for its decision, which adequately addresses the relevant factors, complies with Section 5323(d).

***A.V. v. S.T.***, 87 A.3d 818, 823 (Pa. Super.  2014) (citations omitted).

> Section 5328(a) provides:
>
> **(a) Factors**. - In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:
>
>> (1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.
>>
>> (2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.
>>
>> (2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).
>>
>> (3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a).

Section 5337(h) provides:

**(h) Relocation factors**.--In determining whether to grant a proposed relocation, the court shall consider the following factors, giving weighted consideration to those factors which affect the safety of the child:

(1) The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.

(2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.

(3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.

(4) The child's preference, taking into consideration the age and maturity of the child.

(5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.

(6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.

(7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.

(8) The reasons and motivation of each party for seeking or opposing the relocation.

(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.

(10) Any other factor affecting the best interest of the child.

23 Pa.C.S. § 5337(h).

Additionally, Section 5337(i) provides:

**(i) Burden of Proof.—**

(1) The party proposing the relocation has the burden of establishing that the relocation will serve the best interest of the child as shown under the factors set forth in subsection (h).

(2) Each party has the burden of establishing the integrity of that party's motives in either seeking the relocation or seeking to prevent the relocation.

23 Pa.C.S. § 5337(i). Section 5337(l) further provides, "If a party relocates with the child prior to a full expedited hearing, the court shall not confer any presumption in favor of the relocation." 23 Pa.C.S. § 5337(l).

Turning to the instant case, the record reflects that on July 5, 2017, the trial court issued its final custody order together with Findings of Facts and Conclusions of Law. The trial court considered and discussed all the best interest factors outlined in Section 5328(a), and all the relocation factors enumerated in Section 5337(h).

With respect to the custody factors, the trial court found § 5328(a)(1), party most likely to encourage contact, was weighed slightly in favor of Father. The trial court found § 5328(a)(2), regarding present and past abuse, weighed in favor of Mother, although the trial court was satisfied Children are not at risk in Father's custody. The trial court also found §§ 5328(a)(3), performance

of parental duties, and 5328(a)(4), child's need for stability and continuity — the factor that gave the trial court "the most concern,"[4] — were weighted to Mother. Sections 5328(a)(9) and (a)(10), regarding the party more likely to maintain relationship adequate for child's emotional needs, and party more likely to attend to child's daily and special needs, respectively, also weighed in favor of Mother. The remaining custody factors either weighed equally to the parties, did not weigh to either party, or were neutral. *See* Trial Court's Findings of Fact and Conclusions of Law, 7/5/2017.

With respect to the relocation factors, the court specifically found that §§ 5337(h)(2), the likely impact of relocation on the child, and 5337(h)(6) and (h)(7), prospective improvements to the quality of life of Mother and Children, respectively, favored relocation, and that the remaining factors would not negatively impact Children's relationship with Father. *See id.*

Father's first two issues concern Mother's burden of proof as the relocating party, and therefore we discuss them together. First, Father contends the court disregarded the prohibitions of Section 5337(l), *supra*, by conferring a presumption in favor of Mother's relocation with Children, and improperly shifting the burden of proof away from Mother as the relocating party. Father argues, "the trial court's earlier action in allowing a 'temporary' relocation on an 'emergency' basis had the effect of creating just such a

---

[4] Trial Court Findings of Fact and Conclusions of Law, 7/5/2017, at ¶14.

presumption, which then worked to shift, or at least relieve the burden of proof from the relocating Mother." Father's Brief at 30. Father claims "the practical effect of that [temporary custody] order was to give Mother legal cover to make her move to Honey Brook permanent without the necessity of formally requesting and receiving permission to do so, even in the face of a filed formal objection by Father." *Id.* at 32.

Father quotes from the trial court's opinion wherein the trial court "pointed out that the physical location of the parties and the children was a secondary consideration to the initial determination regarding which parent was better able to care for the children," and stated "[i]t was the parent more than the area or community, which dictated the outcome of this case." *Id.* at 33, *citing* Trial Court Opinion at 8, 10. Father contends the trial court's approach was a misapplication of the law or an abuse of discretion. *Id.* at 33. In support, Father cites *B.K.M. v. J.A.M.*, 50 A.3d 168 (Pa. Super. 2012), for the principle that the trial court shall consider all the enumerated custody and relocation factors, with weighted consideration given to those factors affecting the safety of the children. Father's Brief at 33-34, *citing B.K.M.* at 173-174. Father argues:

> None of the court's findings (in its final custody order) implicated the safety of the children or suggested that they were more or less "safe" with one parent or the other. Consequently, there is no special weighting to be given to any of the remaining factors to be considered under sections 5328(a) and 5337(h). And yet this is what the trial court has done; give significantly greater weight to its determination as to which parent — seemingly in the abstract — was preferable, than to how the totality of the

- 10 -

circumstances would best serve the interests of the children. By doing so, the trial court discounted the value of the relocation factors in favor of the custody factors; thus reducing the analysis of the relocation factors from a searching inquiry to determine how to promote the children's best interests where the non-moving parent's custodial rights will by definition be impaired, to a largely empty gesture made merely to satisfy a statutory dictate.

Father's Brief at 34.

Father continues: "[H]aving prevailed on the question of primary custody, Mother was effectively relieved of what would otherwise be her obligation and her burden to prove: that the proposed relocation in and of itself serves and promotes the best interests of the children." Father's Brief at 35. Father maintains "to begin from the assumption that a pre-existing relocation should not be disturbed is to apply the very presumption that section 5337(l) is intended to prohibit." *Id.* at 36.

In his second argument, Father asserts:

This issue necessarily tracks the previous issue. If, as presented above, the trial court improperly applied a presumption in favor of Mother's existing relocation and caused the burden of proof to shift from her, then the court's analysis of the ten enumerated factors in section 5337(h) will be flawed as a matter of law.

Father's Brief at 36. In support of this argument, Father sets forth the following examples.

Father argues the trial court's findings that the benefit of relocation has been that Mother "has a good job" and "has made a work commitment to the

community"[5] seem to imply Mother's relocation was motivated in part by improved employment prospects, but the record reveals Mother has been in the same job for three years in Paoli, not Honey Brook. Father's Brief at 36-37. Father also cites the trial court's finding that relocation will enhance the general quality of life of the child, contending that the trial court does not discuss how Children are directly affected and focuses instead on how the relocation was positive for Mother. *Id.* at 37. Father maintains "the conclusion that Mother's flight from the family home was necessary and in her best interest does not automatically lead to the conclusion that it was also in the best (or better) interest of the children." *Id.* Father further asserts that the trial court's failure to discuss Children's current and prior living and learning environment in its final custody order, and the trial court's post-hoc justification in its Rule 1925(a) opinion cannot substitute for the requirement that the trial court set forth its reasoning in its decision in a custody proceeding. Father states:

> Thus, what remains is what was highlighted in the previous section; that the trial court made resolution of the relocation question dependent on resolution of the question of primary custody, rather than considering the relevant relocation factors independently, and then discussed those factors in light of its determination of custody, rather than on their own merits.

*Id.* at 38.

---

[5] Trial Court's Findings of Fact, 7/5/2017, at ¶¶ 32-33.

We find no merit in Father's arguments. Contrary to the position of Father, "[i]t is **within the trial court's purview** as the finder of fact to determine **which factors are most salient and critical** in each particular case." **M.J.M. v. M.L.G.**, 63 A.3d 331, 339 (Pa. Super. 2013) (emphasis added). Furthermore,

> [t]he parties cannot dictate the amount of weight the trial court places on evidence. Rather, the paramount concern of the trial court is the best interest of the child. Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.

**R.L.P. v. R.F.M., supra**, 110 A.3d at 208 (citations omitted).

In **B.K.M., supra**, cited by Father, this Court held the unambiguous language of section 5337(l) simply prohibits a trial court from adopting a *prima facie* inference in favor of the relocating party and protects against requiring "the party opposing relocation to bear the burden of rebutting such an inference." **Id.** at 175. However, the trial court is permitted to consider evidence from the period of the relocation. **Id.**

At the hearing, Mother testified that she was employed throughout the marriage but had little to no access to the parties' money until a joint checking account was opened when they moved to Glen Mills.[6] **See** N.T., 5/1/2017, at 179-181. Mother testified she did not want to continue to live in the home

---

[6] The parties had lived in Glen Mills for three years at the time of the hearing. **See** N.T., 5/1/2017, at 150.

- 13 -

environment and she felt Children deserved better. *Id.* at 152. Mother testified she felt the marriage was over, and she was sick of living in fear and intimidation of Husband all the time. *Id.* She explained she moved to live with Amber Delikat in Honey Brook because she "had some support friend-wise[, t]he cost of living was a factor," and "childcare [was] readily available to [her] that was affordable," while she established herself financially. *Id.* at 197. Regarding Mother's financial situation at the time she moved to Honey Brook, Mother testified that on the day she left with Children, after she texted Father to tell him that she was leaving with Children and where they would be staying, Father drained the bank account. *Id.* at 200. Mother testified Father's threats and intimidation "led me to act the way I did". *Id.*

While the trial court found the custody factors favored Mother, particularly as the primary caregiver and based upon Children's need for stability, it is clear the trial court also credited Mother's evidence that her move to Honey Brook was "one of necessity" due to "what the Court perceived as genuine concern with Father's reaction to her leaving"; that Mother "had little financial, emotional or family support other than Amber Delikat in Honey Brook"; that "Mother's motivation was to establish a life separate from Father"; and that Mother "moved to the only place she would have support." Trial Court's Findings of Fact and Conclusions of Law, 7/5/2017, ¶34. *See also id.* at ¶35 ("Mother appeared at the very least intimidated by Father. Her move has given her some beneficial independence."). As such, the trial

court found Mother had valid reasons to move with Children to Honey Brook, and "limiting Father's time with Children was not the motivation." *Id.* at ¶34.

Furthermore, while it would have been more helpful if the trial court had more fully discussed Children's life and school in Glen Mills and Honey Brook in its Findings of Fact and Conclusions of Law, it is evident that the trial court did properly consider evidence of the effect on Children of the move to Honey Brook and their leaving Glen Mills. The trial court found that Children "had comfortably settled into their home, school and community with Mother in Honey Brook [and t]hey appeared happy and secure"; that Mother "has established a solid balanced life for herself and the boys"; and that Mother's "more positive outlook … is a huge benefit to the children and their future as well adjusted adults." Trial Court's Findings of Fact and Conclusions of Law, 7/5/2017, ¶¶27, 32, and 33. The trial court further found "[t]he move did not seem to have impacted the children in a negative manner," and Mother's and Father's ties to Delaware County (the location of the marital residence) were "tenuous." *Id.* at ¶¶28, 34. Therefore, the trial court allowed Mother's relocation to Honey Brook with Children. *See* Order, 7/5/2017, at ¶6.

In its Rule 1925(b) opinion, the trial court addressed Father's claims, as follows:

> … Mother moved to Honey Brook out of fear of Father and necessity. The Court believed Mother when she stated that she took the children to Honey Brook without telling Father because of a longstanding atmosphere of threats and intimidation from Father. Mother's testimony that she believed Father's threats to

- 15 -

take the children and/or to harm her appeared to this Court to be genuinely believed by Mother.

\*\*\*\*

… Father alleges this Court erred in failing to apply 23 Pa.C.S.A. § 5337(l) in that it effectively created a presumption in favor of the relocation by considering only the quality of life in Honey Brook and not in Glen Mills. This is simply not true. At the time of trial, evidence was presented that the parties moved quite frequently during their marriage. There was testimony that during their marriage the parties lived at various times with Father's parents; in an apartment in central Pennsylvania near Father's parents; in a home purchased by Father's parents in central Pennsylvania; in West Virginia; in Ocean City, Maryland and in at least two rental residences in Delaware County. The physical location of the family was secondary to the determination of what parent was better able to serve the best interests of the children. This Court did consider the children's life when they lived in Glen Mills. **It was significant that the children were wholly unconcerned regarding the move from their old neighborhood or school. In fact, neither boy testified to missing their former school, friends or community. While this may be partly a function of their age, it seemed apparent that the children had not become a part of the Glen Mills/Garnet Valley community such that they felt any loss. The family's ties to the community seemed superficial. Neither parent has family in Delaware County. The boys had not established any significant ties to the community; neither parent worked in Delaware County and the residence was a leased property; the future availability of which was not guaranteed.** It was the parent, more than the area or community, which dictated the outcome in this case. Nonetheless, Father's suggestion that the Court did not consider the quality of life in Glen Mills is simply untrue.

[Father] expands on th[e previous] assignment of error by alleging that this Court erred when it failed to consider that Garnet Valley is a higher rated school than the children's new school; in failing to compare the physical characteristics of the residence in Glen Mills to the residence Mother provided, first temporarily with a friend, and ultimately in an apartment; in failing to consider that the move did not result in more favorable employment to Mother; and finally in not considering alternatives for Mother that would

- 16 -

have lessened the physical distance between the Parties. These suggestions are simply untrue. That the home in Glen Mills was a single family; larger home in an awesome school district, did not outweigh the Court's belief that Mother was the more capable, consistent, mature, reasonable caretaker for the children. Father's suggestion that this Court could not have allowed the move based on factors other than those related to his own ability to parent is yet another example of his inability to recognize and accept the consequences of his own behavior.

\*\*\*\*

Father suggests that the physical home in Glen Mills was superior to the physical home provided by Mother such that the move could not be sanctioned. That is simply nonsense. To suggest that the bigger house in the nicer neighborhood wins is not the law**. The emotional wellbeing of the children, along with their physical health and maintenance trumps the nicer home. In this case that warrants allowing the move with Mother. The children's testimony that they felt happy, safe and connected to their school and community in Honey Brook was an obvious contrast to their testimony regarding their life in Glen Mills.**

The Court did not consider if Mother should have moved to another home within the Garnet Valley School District because this was not suggested as an option by either party. Mother testified that she did not have any access to the parties' finances while they lived in Glen Mills. Mother's ability to move from the marital home was severely restricted by her lack of financial control. The only alternative to the facts as they existed at trial was Father's suggestion that he was exploring moving to West Chester to be closer to Mother's residence. Such a move would certainly warrant a review of the existing Custody Order. The weight given the impact or lack of impact on Mother's finances is wholly within this Court's discretion. There was no error or abuse of discretion in the Court's assignment of weight to this fact.

Trial Court Opinion, 8/30/2017, at 7, 9-12 (emphasis added).

Based on our review, we find the trial court properly considered all

relevant custody and relocation factors, and held Mother to her burden of proof

to show relocation was in the best interests of Children under § 5337(h). Furthermore, the trial court properly considered relevant evidence concerning Children's life in Honey Brook and Glen Mills. Here, the trial court, in determining Children's best interests, placed emphasis on Children's sense of well-being in Honey Brook. Also significant to the trial court was the fact that the move did not appear to have negatively impacted Children, and the fact that the parties had only tenuous ties to Delaware County. The trial court's findings are supported by the record. Therefore, Father's disagreement with the trial court's analysis presents no basis upon which to disturb this decision. *See R.L.P. v. R.F.M., supra*, 110 A.3d at 208 ("[T]he parties cannot dictate the amount of weight the trial court places on evidence. Rather, the paramount concern of the trial court is the best interest of the child.") (quotations and citation omitted). Accordingly, Father's first two arguments warrant no relief.

In his final argument, Father contends the trial court erred or abused its discretion in neither discussing nor considering Mother's failure to comply with Pa.C.S. § 5337(c) and Pa.R.C.P. 1915.17, requiring giving notice of a proposed relocation, and in neither discussing no considering the potential sanctions for such failure provided in Section 5337(j).[7]

_____

[7] Section 5337(j) provides:

The trial court rejected Father's claim in its Pa.R.A.P. 1925(a) opinion, explaining:

> … Mother testified that her unannounced leaving was motivated by fear, which fear this Court believed was genuine. The failure of notice is not a standalone fact that results in sanctions, but a fact for which reasons may be presented.
>
> ****
>
> …[T]his Court recognized, in its recitation of the procedural history, that Mother failed to file a Notice of Intent to Relocate. The Court is not required to consider that fact in a vacuum in its determination of relocation pursuant to 23 Pa.C.S.A. § 5337(j). There can be no error or abuse of discretion. The Court believed Mother's testimony regarding why, how and when she moved. At the hearing on September 16, 2016, this Court resolved the emergency by determining that Mother's move was based on

---

**(j) Failure to provide reasonable notice.**— The court *may* consider a failure to provide reasonable notice of a proposed relocation as:

(1) a factor in making a determination regarding the relocation;

(2) a factor in determining whether custody rights should be modified;

(3) a basis for ordering the return of the child to the nonrelocating party if the relocation has occurred without reasonable notice;

(4) sufficient cause to order the party proposing the relocation to pay reasonable expenses and counsel fees incurred by the party objecting to the relocation; and

(5) a ground for contempt and the imposition of sanctions against the party proposing the relocation.

23 Pa.C.S. § 5337(j) (emphasis added).

necessity and a Temporary Order for custody was entered. There was no abuse of discretion.

Trial Court Opinion, 8/30/2017, at 6-7.

In his brief, Father maintains:

The trial court did not offer any meaningful discussion of Mother's failure to follow law and procedure in its determination of the matter, and to the extent that it did, it seems to have excused Mother's non-compliance on the basis of its conclusion that Mother's initial flight from the marital home was necessary and justified. Be that as it may, at some point, the "emergency" had abated; at some point, Mother's "temporary" escape became a permanent move. It is unclear why Mother's failure to give legally-required notices and follow established procedures to obtain the very thing she seemed to want (i.e., ratification of her second, permanent move) when neither time nor circumstance prevented her from doing so did not warrant more scrutiny from the trial court.

****

It is respectfully submitted that, although a trial court is not required to impose any particular 5337(j) sanction for a failure to give notice, the trial court abused its discretion or erred as a matter of law in failing to meaningfully address Mother's intransigence, or to explain why the same was (or was not) forgivable.

Father's Brief, at 40-41.

Based on our review, we find no basis upon which to disturb the decision of the trial court. Under the statute, the trial court was not required to consider a failure to provide reasonable notice of a proposed relocation to sanction Mother. *See* 23 Pa.C.S. 5337(j) ("court **may** consider a failure to provide reasonable notice of a proposed relocation") (emphasis added). Because the trial court is not required to consider the failure to provide

- 20 -

reasonable notice, it follows that the trial court is not obligated to discuss Section 5337(j). Here, in light of the permissive "may" of Section 5337(j), the trial court's awareness that Mother did not provide the requisite notice to Father, and the court's finding that Mother's move was "one of necessity,"[8] there is no basis upon which to conclude the trial court abused its discretion by not discussing or applying Section 5337(j) in this case. Therefore, we reject Father's third claim.

Accordingly, we affirm.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/12/18

---

[8] Trial Court's Findings of Fact and Conclusions of Law, 7/5/2017, at ¶ 34.

- 21 -